J-A31015-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PATRICE LONG, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| VICTOR J. FARALLI, M.D.; LEBANON ORTHOPEDIC ASSOCIATES, LTD., | |
| Appellees | No. 614 MDA 2014 |

Appeal from the Judgment Entered May 1, 2014
In the Court of Common Pleas of Lebanon County
Civil Division at No(s): 2008-00652

BEFORE:  BOWES, OTT, and STABILE, JJ.

MEMORANDUM BY BOWES, J.:                 **FILED DECEMBER 15, 2014**

Patrice Long appeals from the judgment entered on a jury verdict in favor of Victor J. Faralli, M.D. and Lebanon Orthopedic Associates, LTD in a medical malpractice action.[1]  She alleges that the trial court erred in permitting the defense to introduce the expert testimony of a physician who was not board-certified in the specialty at issue or in a related specialty.  In addition, she claims that a mistrial was warranted when the defense expert's prejudicial reference to care furnished by a subsequent treating physician violated a stipulation.  We affirm.

---

[1]  Since the claims against Lebanon Orthopedic Associates, LTD are based solely on vicarious liability for the conduct of Dr. Faralli, we will refer to both parties as "Dr. Faralli" or as "the Defendant" or "the defense."

The evidence adduced at trial established the following.[2]  On July 13, 2005, Ms. Long's fingertip was amputated after she caught it in a drawer. She sought medical care at Good Samaritan Hospital, and was treated by Dr. Faralli, an orthopedic surgeon.  Dr. Faralli surgically closed the wound using a V-Y flap procedure and placed Ms. Long on an antibiotic.  Ms. Long returned to Dr. Faralli for follow-up appointments on July 14, 21, and 28, and August 4 and 10, 2005.  Dr. Faralli's July office notes confirm that Ms. Long expressed concern that the wound was infected.

On July 23, 2005, Appellant's friend was changing the bandage when she noticed an increase in redness, swelling and discharge.  Ms. Long telephoned Lebanon Orthopedic to convey this concern.  Ms. Long testified that, at her regularly-scheduled appointment on July 28, 2005, she told Dr. Faralli that her pain was increasing, the finger was turning purple, and that the swelling was worsening.  Dr. Faralli's office note acknowledged her concerns, but stated that no signs of infection were observed.

Ms. Long claimed that her symptoms persisted and grew more severe. She called Dr. Faralli to obtain more pain medication.  At her August 4, 2005 follow-up appointment, she asked for a referral to Hershey Medical Center for a second opinion.  Dr. Faralli declined to refer her because he did not see signs of infection.  One week later on August 10, 2005, Ms. Long told the

---

[2]  Since only a portion of the trial notes of testimony are contained in the certified record, we rely heavily upon the trial court's recitation of the facts.

doctor that she had a yellow line and asked whether that indicated infection. The physician's notes stated that he saw no yellow line or sign of infection.

On August 13, 2005, Ms. Long went to Good Samaritan Hospital's emergency room with complaints of discharge coming from the wound. The wound was cultured and the physician prescribed Keflex, an antibiotic. Two days later, a hospital physician notified Ms. Long that culture revealed that she had Methicillin Resistant Staphylococcus Aureus ("MRSA"). The physician discontinued the Keflex, prescribed Bactrim, and instructed her to follow up with Dr. Faralli.

Dr. Faralli supervised Ms. Long's treatment for the MRSA infection from August 13, 2005 through October 13, 2005. Although Ms. Long continued to believe that the wound was infected, Dr. Faralli's notes indicated that pain, swelling and redness were decreased, there was no discharge, and that her range of motion was good. He maintained her on Bactrim, and, on October 6, 2005, Dr. Faralli ordered a bone scan and referred Ms. Long to Hershey for a second opinion. On October 13, 2005, Dr. Faralli advised Ms. Long that the bone scan results did not indicate osteomyelitis, infection in the bone of the finger, and he stayed the course until she was seen at Hershey.

Ms. Long was seen at Hershey by Dr. Randy M. Hauck on October 25, 2005. The radiologist interpreted the bone scan results as suggestive of osteomyelitis and Dr. Hauck ordered an x-ray. He subsequently

recommended amputation of the finger in light of Ms. Long's history of diabetes, and Ms. Long agreed. The pathology report on the amputated digit was negative for osteomyelitis.

Ms. Long originally commenced this professional liability action against Dr. Hauck and Hershey Medical Center, as well as Dr. Faralli and his professional corporation. Judgment of *non pros* was entered in favor of Dr. Hauck and the Hershey defendants when Ms. Long failed to file certificates of merit as to these medical professionals within the time allotted by Pa.R.C.P. 1042.3. The parties then stipulated to the transfer of the case to Lebanon County for further proceedings against Dr. Faralli and his practice.

Prior to trial, Ms. Long filed several motions *in limine* regarding expert testimony. She alleged that the opinions of Dr. John Stern and Dr. William Kirkpatrick were duplicative and cumulative. Alternatively, she alleged, pursuant to MCARE, 40 P.S. § 1303.512(c)(2), that Dr. Stern was not qualified to testify as to the standard of care of an orthopedic surgeon since he was not board-certified in the same subspecialty as Dr. Faralli. Moreover, she asserted that Dr. Stern's second supplemental report was redundant standard of care opinion and unfairly critical of Dr. Hauck. **See** Motion to Exclude the Expert Testimony of John Stern, M.D. Pursuant to Pa.R.E. 403 and 40 P.S. § 1303.512(c)(2). Ms. Long argued that the exclusion of the testimony of John Stern, M.D. would not be prejudicial since the defense had a second standard-of-care expert. **Id**. at ¶¶60-61. Thereafter, the parties

entered into a stipulation to resolve these outstanding issues. The stipulation provided in part:

> . . . .
>
> 2. The only testimony that will be admitted regarding Dr. Hauck and Hershey Medical Center is recitation of the facts. The facts include the care that was received at Hershey Medical Center and that an amputation was performed.
>
> 3. No expert will offer criticism or support for Dr. Hauck's plan of care. The Plaintiff's expert will not testify that Dr. Hauck's plan of care or ultimate treatment was appropriate for the circumstances. The Defense expert will not testify that Dr. Hauck's plan of care was inappropriate for the circumstances, that there were reasonable alternatives, or that further testing should have been done.
>
> . . . .
>
> 5. Dr. Stern's third report, served on Plaintiff on February 26, 2014, is excluded. Accordingly, Dr. Stern will be confined to testifying consistent with his February 7, 2011 report and June 30, 2013 supplemental report.
>
> 6. Due to the duplicative nature of Dr. Stern's first report and Dr. Kirkpatrick's report, Defense Counsel will choose one expert to testify at the trial of this matter.
>
> . . . .

Stipulation of the Parties to Resolve the Outstanding Motions in Limine, 3/7/14, at 1-2.

A jury trial commenced on March 12, 2014. Ms. Long presented expert testimony from Dr. Stephen H. Marcus, an orthopedic surgeon, regarding Dr. Faralli's alleged breach of the applicable standard of care and causation based on Ms. Long's version of the events. The defense offered

- 5 -

the expert testimony of Dr. John Stern, a physician double board-certified in internal medicine and infectious disease from the Pennsylvania Hospital at the University of Pennsylvania. Dr. Stern relied largely upon Dr. Faralli's notes and the hospital records in forming his opinion that Dr. Faralli's treatment met the standard of care.

During the course of his direct testimony, Dr. Stern was asked what he found important in his review of Dr. Hauck's records. In response, he stated, "I was surprised that he took the finger off or wanted to take the finger off." *Id*. at 152. Plaintiff's counsel objected and moved for a mistrial at sidebar. The trial court initially reserved its ruling on the motion for mistrial, but subsequently denied the motion.

The jury returned a verdict in favor of Dr. Faralli and his practice. Ms. Long filed a motion for post-trial relief, which the trial court denied on March 21, 2014. Ms. Long timely appealed and raises two issues:

> A. Did the trial court err in denying the Appellant's Motion for Post Trial Relief requesting a new trial?
>
> > i. Did the Lebanon County Court of Common Pleas err when it allowed expert opinion of standard of care by a doctor who was not qualified to give such an opinion pursuant to 40 P.S. § 1303.512(c), (e)?
> >
> > > a. Was this issue properly raised after the voir dire of the defense expert?
> >
> > ii. Did the Lebanon County Court of Common Pleas err by failing to grant a mistrial when the expert for the Appellee's testified outside the scope of the parties explicit stipulation?

Appellant's brief at 5.

"There is a two-step process that a trial court must follow when responding to a request for new trial." ***Morrison v. Commonwealth, Dep't of Pub. Welfare***, 646 A.2d 565, 571 (Pa. 1994); ***see Riccio v. Amer. Republic Ins. Co.***, 705 A.2d 422, 426 (Pa. 1997). First, the trial court must decide whether one or more mistakes occurred at trial. If the trial court concludes that a mistake (or mistakes) occurred, it must then determine whether the mistake was a sufficient basis for granting a new trial. ***Ferguson v. Morton***, 84 A.3d 715, 719-720 (Pa.Super. 2013). The harmless error doctrine underlies every decision to grant or deny a new trial. "A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake." ***Id***.

When this Court reviews a trial court order granting or denying a new trial, our analysis is also dual-pronged. ***Morrison***, ***supra*** at 571. If, after examining the alleged error, we find that an error did occur, we determine whether the trial court abused its discretion in ruling on the request for a new trial. ***Id***. "Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion." ***Id***.

Ms. Long's first issue involves the interpretation and application of 40
P.S. § 1303.512(c) and (e)[3] of the MCARE statute, which is a question of

---

[3] § 1303.512.  Expert qualifications

(a) GENERAL RULE.-- No person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable.

(b) MEDICAL TESTIMONY.-- An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:

> (1) Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia.

> (2) Be engaged in or retired within the previous five years from active clinical practice or teaching.

Provided, however, the court may waive the requirements of this subsection for an expert on a matter other than the standard of care if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience.

(c) STANDARD OF CARE.-- In addition to the requirements set forth in subsections (a) and (b), an expert testifying as to a physician's standard of care also must meet the following qualifications:

> (1) Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care.

*(Footnote Continued Next Page)*

law. ***Wexler v. Hecht***, 928 A.2d 973, 977 (Pa. 2007); ***Renna v. Schadt***,

64 A.3d 658 (Pa.Super. 2013). Thus, our standard of review is *de novo* and

our scope of review is plenary. ***Gbur v. Golio***, 963 A.2d 443 (Pa. 2009).

The law is well settled that decisions regarding admission of expert

*(Footnote Continued)* ───────────

> (2) Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, except as provided in subsection (d) or (e).
>
> (3) In the event the defendant physician is certified by an approved board, be board certified by the same or a similar approved board, except as provided in subsection (e).

(d) CARE OUTSIDE SPECIALTY.-- A court may waive the same subspecialty requirement for an expert testifying on the standard of care for the diagnosis or treatment of a condition if the court determines that:

> (1) the expert is trained in the diagnosis or treatment of the condition, as applicable; and
>
> (2) the defendant physician provided care for that condition and such care was not within the physician's specialty or competence.

(e) OTHERWISE ADEQUATE TRAINING, EXPERIENCE AND KNOWLEDGE.-- A court may waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period.

testimony, like other evidentiary decisions, are within the sound discretion of the trial court. **Phillips v. Lock**, 86 A.3d 906 (Pa.Super. 2014). We may reverse only if we find an abuse of discretion or error of law. **Smith v. Paoli Mem'l Hosp.**, 885 A.2d 1012, 1016 (Pa.Super. 2005).

Ms. Long contends that Dr. Faralli's negligence occurred at two distinct times, the first encompassing the post-surgical follow-up leading up to the diagnosis of MRSA on August 13, 2005, and the second, the treatment of the MRSA infection. She concedes that Dr. Stern was qualified under subsection (e) to offer expert opinion regarding proper treatment of the infection during the latter period. She maintains that, despite his board certifications in infectious disease and internal medicine, Dr. Stern was not qualified under MCARE subsection (c)(3) to opine as to the standard of care applicable to an orthopedic surgeon in recognizing the signs and symptoms and diagnosing infection. Nor, she contends, did Dr. Stern have sufficient training and experience in a related field of medicine to fall within the exception of subsection (e) for purposes of rendering an opinion as to the reasonableness of his diagnosis.

Ms. Long's argument mirrors one advanced in **Lombardo v. Gardner**, 82 Pa. D.&C.4[th] 233 (Lawrence Co. 2007), a malpractice case against an orthopedic surgeon for failing to diagnose an arterial blood clot following hip surgery. The trial court found that, although the vascular surgeon was familiar with the signs and symptoms of circulatory problems, and consulted

- 10 -

with orthopedists regarding treatment of such conditions, such facts did not equate to special knowledge "regarding how orthopedists are expected or supposed to think about patients after orthopedic surgery." *Id*. at 249. The court did not permit the vascular surgeon to render expert standard of care testimony regarding diagnosis on behalf of the defendant orthopedic surgeon. However, this ruling was not subjected to appellate scrutiny.

Ms. Long also directs our attention to *Vicari v. Spiegel*, 989 A.2d 1277 (Pa. 2010), where our High Court held that a determination of "relatedness" for purposes of subsection (e) required both an examination of the specific care at issue and the testimony the expert will render. In *Vicari*, an oncologist was permitted to render standard of care testimony on the propriety of chemotherapy on behalf of the defendant otolaryngologist. Since the issue involved the treatment plan for this type of cancer, the Court reasoned that oncologists, who routinely develop such plans, were qualified to opine on the reasonableness of scheduling chemotherapy.

Dr. Faralli characterizes the issue in *Vicari* as whether the patient should have been referred to a medical oncologist and provided chemotherapy as an option. The *Vicari* Court found board-certifications in internal medicine, otolaryngology, and radiation oncology to be related for purposes of cancer treatment, noting the multi-specialty approach. Dr. Faralli also contends that *Lombardo* is not authoritative, and furthermore, the trial court therein was handicapped by a limited record as there was no

*voir dire* of the expert. Dr. Faralli points to our decision in **Renna v. Schadt**, 64 A.3d 658 (Pa.Super. 2013), where we affirmed the trial court's decision permitting a pathologist to testify as to the standard of care of a surgeon in choosing to perform a fine needle biopsy to obtain a specimen for testing, which was based upon an extensive *voir dire*. Dr. Faralli contends that the exhaustive *voir dire* of Dr. Stern presents an even stronger case than **Renna** for permitting him to testify as to the standard of care applicable to both the diagnosis and treatment of infection.

The record reveals that during *voir dire*, Dr. Stern testified that he was familiar with the standard of care for diagnosing and treating infections. N.T., 3/13/14, at 94. He acknowledged that other specialties treat wound infections, including family physicians, obstetricians, surgeons, and orthopedic surgeons in particular. He maintained that the standard of care for the diagnosis and treatment of an infection in an open wound is the same, regardless of the specialty of the treating physician. *Id*. at 96. Dr. Stern explained that there are areas of overlap in medicine, and even though he does not operate, he would care for surgical patients, and physicians who operate would care for infections. *Id*. at 97.

On cross-examination on *voir dire* of his qualifications, Dr. Stern agreed that it is the surgeon's job to recognize the signs and symptoms of infection initially and to initiate treatment. *Id*. at 100. It is only when the surgeon believes the infection is beyond his expertise that he would seek a

consultation from infectious disease. *Id*. at 102. He opined that, having reviewed Ms. Long's records, he did not believe that an infectious disease consult was necessary; Dr. Faralli had the skills to recognize a problem if there was one. *Id*. at 102. While Dr. Stern admittedly did not undergo the same training as an orthopedic specialist, he pointed to his twenty-six-year-involvement in the hospital training program for orthopedic interns, residents, fellows, and attending physicians as the basis for his familiarity with the extent of their training.

At the conclusion of *voir dire* on Dr. Stern's qualifications, counsel for Ms. Long moved to preclude the expert from testifying as to the standard of care of an orthopedic surgeon in diagnosing infection based upon the MCARE Act's same specialty requirement. Plaintiff argued that the expert was not qualified to speak to whether an orthopedic surgeon such as Dr. Faralli should have recognized the signs of infection prior to August 13, 2005. *Id*. at 106. Plaintiff characterized the issue as focusing on when the surgeon should have realized that he could not treat the infection. *Id*. Ms. Long had no issue, however, with the expert discussing the nature of the treatment.

The defense initially labeled Plaintiff's attack on Dr. Stern's qualifications as "disingenuous" in light of her earlier motion *in limine* which characterized the opinions of the two proffered defense experts, one an orthopedic surgeon, and Dr. Stern, an infectious disease specialist, as cumulative. Furthermore, "due to the duplicative nature of Dr. Stern's first

report and Dr. Kirkpatrick's report," the parties stipulated that, "Defense counsel will choose one expert to testify at the trial of this matter." Stipulation of the Parties to Resolve the Outstanding Motions in Limine, 3/7/14, at 1. According to the defense, Plaintiff's argument at trial that Dr. Stern was not qualified to testify regarding the standard of care for an orthopedic surgeon was inconsistent with and precluded by her earlier position that the testimony was cumulative, which culminated in the stipulation. Dr. Faralli characterizes the stipulation as law of the case.

The trial court relied upon **Vicari**, **supra** and **Gbur**, **supra**, in overruling Ms. Long's objection. In **Vicari**, as noted, an oncologist was held to be qualified to testify as an expert regarding the care rendered by the defendants, an otolaryngologist and a radiation oncologist. Similarly, in **Gbur**, the Supreme Court sanctioned the decision of the trial court allowing a radiation oncologist to testify to the standard of care applicable to the defendant urologist under the same subspecialty exception of 40 P.S. § 1303.512(e). Based on a thorough *voir dire* that established that Dr. Stern was involved in the training of orthopedic surgeons for years and experienced in the diagnosis and treatment of infections, the trial court found Dr. Stern qualified to testify as an expert for the diagnosis and treatment of infections under the subsection (e) exception to the same specialty requirement. N.T., 3/13/14, at 110; Trial Court Opinion, 5/27/14, at 9.

The court also agreed with the defense that the stipulation was a concession by Plaintiff that either of the two defense experts was qualified to testify as to the standard of care in the diagnosis and treatment of infection. *Id*. In further support of its ruling, the trial court noted little difference in the standard of care opinions of Plaintiff's expert and Dr. Stern. The trial court believed that whether Dr. Faralli was negligent turned on whether the fact-finder believed Ms. Long's account of the events or Dr. Faralli's office notes. "If Appellant's recollection[s] of the wound and her symptoms were correct, then Appellee's actions or inactions in diagnosing and treating the infection were below the applicable standard of care of an orthopedic surgeon. If Appellee's notes reflect an accurate description of the wound and the healing process, then Appellee's actions did not fall below the standard of care of an orthopedic surgeon in the diagnosis and treatment of post-operative infections." Trial Court Opinion, 5/27/14, at 6.

Although Dr. Stern was familiar with the standard of care for the diagnosis of infection, since he did not practice and was not board-certified in the same specialty as Dr. Faralli, we agree with the trial court that he was not qualified to render expert standard of care testimony by virtue of subsection (c). However, in *Vicari*, our Supreme Court construed the § 512(e) exception as a waiver of the same board and same specialty requirements where the physician had sufficient training, experience, and knowledge in a related field of medicine. The *Vicari* Court cautioned that,

"'relatedness' of one field of medicine to another for purposes of subsection 512(e) cannot be established in a broad and general sense that will henceforth be applicable to all situations and all claims[,]" but "can only be assessed with regard to the specific care at issue." *Vicari* at 1284. The expert and the defendant physician must have sufficiently related training, experience, and practices to permit one to conclude that the proffered expert's "expertise would necessarily extend to the standards of care pertaining in the defendant-physician's field." *Id*. at 1283-84. The trial court found that although Dr. Stern did not undergo the same training as an orthopedic specialist, due to his lengthy involvement in the hospital training program for orthopedic interns, residents, fellows, and attending physicians, he was familiar with the extent of their training. We find no abuse of discretion on the part of the trial court.

Additionally, we agree with the trial court that the parties' stipulations were intended to dispose of all issues raised in the motions *in limine*. In her pretrial motion *in limine*, Ms. Long asserted that Dr. Stern was not qualified to testify as to the standard of care under MCARE's same specialty requirement. She also argued, **in the alternative**, that the opinions of Drs. Stern and Fitzpatrick were cumulative. The parties arrived at a stipulation that only one of the defense experts would testify, and that the defense could choose which one. Furthermore, it was stipulated that Dr. Stern was

confined to testifying consistently with his February 7, 2011 and June 30, 2013 reports.

The stipulation was expressly intended to resolve all outstanding motions *in limine*. Since the challenge to Dr. Stern's qualifications and the argument that the experts' testimony was cumulative were advanced in the alternative, and the parties agreed to one defense expert and to limit the scope of Dr. Stern's testimony, we agree with Dr. Faralli that Plaintiff abandoned any objection to Dr. Stern's qualifications. Plaintiff's tactic of waiting until the Defendant offered Dr. Stern as his trial expert, rather than Dr. Fitzpatrick, and resurrecting the argument that he was unqualified under MCARE, undermines notions of fundamental fairness and fair play.

Finally, we are unable to verify if the record supports the trial court's finding that Dr. Stern and Plaintiff's expert, Dr. Marcus, offered essentially the same opinions regarding the standard of care, but merely premised their opinions as to whether there had been a deviation on the parties' differing versions of the facts. We have no basis to dispute the trial court's characterization of the evidence because only the transcript of Dr. Stern's testimony is contained in the certified record.[4]

---

[4] The record reflects that counsel for Ms. Long requested the official court reporter to "produce, certify and file the transcript in this matter in conformity with rule 1922 of the Pennsylvania Rules of Appellate Procedure." Notice Regarding Transcript of Record, 4/3/14, at 1. The court reporter notified the parties on April 7, 2014 that "the transcript of the record as
*(Footnote Continued Next Page)*

- 17 -

Next, Ms. Long contends that the stipulation of the parties was violated when Dr. Stern criticized Dr. Hauck's recommendation that her finger be amputated. Specifically, on direct examination, Dr. Stern was asked what he "found to be important in Dr. Hauck's records[.]" Dr. Stern responded, "I was surprised that he took the finger off or wanted to take the finger off." N.T., 3/13/14, at 152. Counsel objected at sidebar that Dr. Stern's statement was a criticism of Dr. Hauck's treatment, that it violated the stipulation, and was so prejudicial to Plaintiff as to warrant a mistrial. The court initially reserved its ruling on the motion for mistrial, but denied it at the conclusion of Dr. Stern's testimony. Ms. Long maintains that the trial court abused its discretion in denying the mistrial because the expert's testimony was critical of Dr. Hauck, it violated the stipulation, and the "jury heard testimony that was irrelevant, prejudicial, and confused the issues[.]"

Dr. Faralli counters that Dr. Stern's single comment did not amount to a criticism. Nor was a new trial required simply because the stipulation was violated. The defense maintains that, when reviewed in light of the full record and in context, the comment was "insignificant." *__See Harman ex__*

*(Footnote Continued)* ─────────────────

ordered to be transcribed" "was lodged in the Office of the Prothonotary" and that the parties had five days to object to the transcript. Notice of Lodging of Transcript of Record, 4/7/14, at 1. Appended to that filing is a copy of the cover page of the transcript of proceedings for March 13, 2014 only. *Id*. at 2. Neither party objected that the transcript was incomplete. On June 3, 2014, the file was transmitted to this Court and copies of the docket entries were forwarded to counsel for Appellant.

*rel. Harman v. Borah*, 756 A.2d 1116, 1122 (Pa. 2000). It characterizes Dr. Stern's comment as one sentence in two and one-half days of trial testimony that was not mentioned or referred to during the remainder of the proceedings. Appellees' brief at 22.

The trial court noted that the offending response from the witness was unsolicited by counsel and that it consisted of merely "one sentence in the middle of a great deal of testimony." Trial Court Opinion, 5/27/14, at 7. The court concluded that,

> "when viewed in context with the rest of Dr. Stern's testimony and combined with the testimony from all of the other witnesses presented over several days, that the solitary comment that Dr. Stern was surprised, without further explanation or comment, was not sufficient to prejudice the Appellant in the eyes of the jury or distract the jury from the issue of whether Appellee had breached the standard of care."

*Id*. at 13.

Our standard of review of a trial court's denial of a motion for mistrial is whether the trial court abused its discretion. *Poust v. Hylton*, 940 A.2d 380, 382 (Pa.Super. 2007) (finding an abuse of discretion in failing to declare a mistrial where defense counsel's intentional mention of "cocaine" in his cross-examination of plaintiff's expert violated a pretrial order and was highly prejudicial). "An abuse exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Graham v. Campo*, 990 A.2d 9, 14 (Pa.Super. 2010). The trial court has

broad discretion in making its determination as to whether a mistrial is warranted and should grant such a motion and award a new trial only if "the unavoidable effect of the conduct or language used was to prejudice the factfinder to the extent that the factfinder was rendered incapable of fairly weighing the evidence and entering an objective verdict." ***Poust***, ***supra*** at 385.

Again, the absence of the complete record of the trial court proceedings has hindered our ability to assess the trial court's reasoning in the context of the entire trial. We cannot conclude, however, based on the record before us, that the expert's professed surprise at Dr. Hauck's recommendation of amputation was so prejudicial as to render the jury incapable of entering an objective verdict. The stipulation of the parties did not preclude Dr. Faralli from introducing the facts underlying Dr. Hauck's treatment. According to the trial court, the jury heard that Dr. Hauck recommended amputation of the finger due to the possibility of osteomyelitis, that Ms. Long agreed, and that pathology on the finger was negative for osteomyelitis. In light of the foregoing, we find no abuse of discretion in the trial court's conclusion that Dr. Stern's reference was not so prejudicial as to distract the jury from the issues before it.

For the foregoing reasons, the trial court did not abuse its discretion in denying Ms. Long a new trial.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/15/2014