J-A28003-20

2021 PA Super 56

| JANE YOUNG | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOHN E. LIPPL., P.E. | : | No. 227 WDA 2020 |

Appeal from the Judgment Entered March 10, 2020
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  Case no. GD-12-019194

| JANE YOUNG | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOHN E. LIPPL, P.E. | : | |
| | : | |
| Appellant | : | No. 499 WDA 2020 |

Appeal from the Judgment Entered March 10, 2020
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD12-019194

BEFORE:  OLSON, J., MURRAY, J., and McCAFFERY, J.

OPINION BY OLSON, J.:                    **FILED:  March 31, 2021**

In this cross-appeal, Jane Young ("Young") and John E. Lippl, P.E.

("Lippl") appeal different aspects of the March 10, 2020 judgment entered

upon a jury verdict in favor of Young in the amount of $114,947.99.[1]  We

---

[1] A review of Young's notice of appeal demonstrates that Young appealed the
January 17, 2020 order granting, in part, Lippl's post-trial motion to correct a
mathematical error in the amount of the jury verdict.  "[A]n appeal to this
Court can only lie from judgments entered subsequent to the trial court's

affirm. We remand this case, however, for the limited purpose of calculating and awarding post-judgment interest as discussed, *infra.*

The trial court summarized the factual and procedural history as follows:

Beginning in April 2008, [Young] and her former husband, Bruce Goldblatt ("Goldblatt"), entered into an agreement with [a] builder[,] Custom Homes, Inc. ("Custom Homes")[,] for the construction of a [house] in Eighty-Four, Pennsylvania. Numerous disputes arose such that [Young] refused to allow Custom Homes to finish construction, resulting in [Custom Homes commencing] an arbitration action [against Young and Goldblatt] before the America Arbitration Association ("AAA").

At the [arbitration hearing, Lippl[2]] argued on behalf of [Young] and Goldblatt that the [house] was continuing to settle and required stabilization due to Custom Homes' failure to dig to firm clay after charging for extraordinary ground preparation.

[Lippl] consulted with John L. Suhrie, P.E. ("Suhrie") to provide expert analysis of and a detailed report [("the Suhrie Report")] on the claims against Custom Homes for use at [the] arbitration [hearing. Lippl] did not obtain [geotechnical] soil testing in support of [Young's] and Goldblatt's claims.

Arbitrator David Scotti,[Esquire ("Arbitrator")] issued an award on October 14, 2010[,] in favor of Custom Homes in the amount of $64,032.21. The Arbitrator found that [Young] and Goldblatt [] wrongfully terminated [their contract with] Custom Homes, [and denied the builder an] opportunity to correct any issues or to

---

disposition of any post-verdict motions, not from the order denying post-trial motions." ***Johnston the Florist, Inc. v. TEDCO Constr. Corp.***, 657 A.2d 511, 514 (Pa. Super. 1995) (citation omitted). Here, the judgment in favor of Young and against Lippl was entered March 10, 2020. Therefore, Young's notice of appeal shall be treated as filed on March 10, 2020, and as an appeal from the entry of judgment. ***See McEwing v. Lititz Mut. Ins. Co.***, 77 A.3d 639, 645 (Pa. Super. 2013). The caption has been corrected accordingly.

[2] Lippl is an attorney licensed to practice law in the Commonwealth of Pennsylvania. Lippl is also a professional engineer licensed to practice in the Commonwealth of Pennsylvania.

complete the [construction] project. The Arbitrator dismissed [Young's] counterclaims for[,] *inter alia*[,] negligent construction, which asserted that Custom Homes' work was defective and incomplete. Following the award, [Lippl] was terminated as counsel by [Young] and Goldblatt.

[Young] hired GeoMechanics, Inc. ("GeoMechanics"), an engineering company, to conduct [geotechnical] soil testing. As a result [of the soil testing, Young] learned that Custom Homes had poorly compacted the fill material under her [house]. Moreover, GeoMechanics exposed the footers of the foundation and discovered that Custom Homes had not dug deep enough to reach firm clay.

[Young] then filed suit on May 1, 2012[,] against Nottingham Township's building inspector, Code.Sys Consulting, Inc. ("Code.Sys"), alleging that it should have required an engineered caisson foundation rather than a spread footer foundation given the soil conditions. [Young] claimed damages for repair costs based on [building] code violations including[,] but not limited to, failure of the foundation system, permanent loss of use of the property, depreciation in value and marketability of the property, an inability to obtain refinancing[,] and escalating expert and engineering fees. [On September 27, 2017, a] jury ruled in favor of [Young and awarded her] $412,750.00 [in damages].

*In lieu* of an appeal, [Young and Code.Sys] settled for $455,250.00 and executed a settlement and release agreement that specifically discharged any claims [Young] had or may have had against Code.Sys. The language in the agreement stated that [Young],

". . . forever discharges [Code.Sys] from any and all liabilities, charges, claims, causes of action or suits, of whatever kind or nature, absolute, contingent, unliquidated or otherwise, including, but not limited to, any rights, obligations or claims arising out of or related to the lawsuit, which liabilities, charges, claims, causes of action or suits [Young] and her affiliates, agents, representatives, heirs, executors, attorneys, successors and assigns can, shall or may have against [Code.Sys] by reason of any matter, cause or thing whatsoever, occurring prior to the date of this agreement."

Thus, [Young] satisfied any claim she had or may have had against Code.Sys for the defective foundation and subsequent

repairs. The [settlement and release] agreement also discharged Code.Sys from any claims that [Lippl] may have had against it arising out of or related to [Young's] lawsuit.

[Young] filed suit against [Lippl] in December 2012[,] for legal malpractice while the Code.Sys litigation was pending.

[Young] claimed that [Lippl's] failure to obtain [geotechnical] soil testing caused her and Goldblatt to lose at arbitration. She also asserted that the Suhrie [R]eport had recommended that the [geotechnical soil] testing be done. [Young] further argued that [Lippl] could have avoided the finding of improper termination had he shown that Custom Homes' failure to dig to a depth of firm clay was not only a material breach but also fraudulent.

[Lippl] raised numerous affirmative defenses and argued that any reference to [geotechnical] soil testing in the Suhrie [R]eport was related to the risk of future settlement and that such testing would not have revealed that the foundation problems were incapable of repair.[FN1] [Lippl] also asserted that the testing would not have affected the arbitration award since the Arbitrator determined that [Young] and Goldblatt had wrongfully terminated Custom Homes. In fact, it was [Young's] and Goldblatt's prior attorney[,] and not [Lippl,] who had recommended terminating Custom Homes.

> [FN1] In this case, [Young] alleged that she was precluded from seeking recovery against Custom Homes for the total loss of her [house] because of the doctrines of *res judicata* and collateral estoppel. [Young] alleged that Custom Homes would not have been able to cure the defective construction because the [house] was now a total loss. However, this did not preclude [Young] from seeking damages against Code.Sys for repairs to the foundation.

The [trial] court granted [Young's] motion *in limine* to preclude any evidence of or reference to the Code.Sys litigation.[FN2] Therefore, the jury had no knowledge of [Young's] prior recovery against Code.Sys. [Young] was also precluded from offering evidence that was not in existence or capable of being generated in August 2010.

> [FN2] The [trial] court also denied [Lippl's] motion for judgment on the pleadings without prejudice for [Lippl] to argue to offset any damages awarded [in the instant case by the amount previously awarded] in the September 27, 2017 jury verdict [against Code.Sys.]

- 4 -

A seven-day trial was held beginning September 17, 2019. The jury found for [Young] and awarded her $368,401.14 in damages. As noted on the verdict slip, the award consisted of $253,453.15 for "work defective due to structural/foundation issues and repairs," $13,000.00 for the Arbitrator's fees, and $37,915.78 for legal fees. Also included [in the award for damages] was the $64,032.21 arbitration award.

Following the dismissal of the jury, [Young] made an oral motion to mold the verdict. The [trial] court granted [Young's] motion to mold the verdict based upon [its] assumption that the jury had not included the arbitration award in its calculation of the total judgment. Accordingly, the [trial] court entered a docketed verdict in the amount of $432,433.35.

Trial Court Opinion, 3/16/20, at 1-4 (extraneous capitalization and record citations omitted).

Lippl filed post-trial motions requesting that the trial court correct a mathematical error in the molded verdict and grant judgment notwithstanding the verdict, pursuant to Pa.R.Civ.P. 227.1. Young filed a post-trial motion requesting the trial court award her pre-arbitration interest in the amount of $127,384.20 and post-arbitration interest in the amount of $233,087.50.[3] On January 17, 2020, the trial court granted Lippl's post-trial motion regarding the mathematical error in the molded verdict and reduced the verdict to $368,401.14. That same day, the trial court granted, in part, Lippl's post-trial motion for judgment notwithstanding the verdict and further reduced the verdict to $114,947.99. The trial court also denied Lippl's post-trial motion

---

[3] Young's calculations for pre-arbitration and post-arbitration interest were based upon the $432,433.35 molded verdict. Young requested pre-arbitration interest at a rate of 12 *per centum per annum* and post-arbitration interest at a rate of 6 *per centum per annum*.

for judgment notwithstanding the verdict, in part, as to Lippl's request to overturn the verdict in its entirety. Finally, that same day, the trial court denied Young's post-trial motion for pre-arbitration and post-arbitration interest.

On February 14, 2020, Young filed notices of appeal from the trial court's January 17, 2020 orders that (1) denied her post-trial motion for pre-arbitration and post-arbitration interest, (2) granted, in part, Lippl's post-trial motion for judgment notwithstanding the verdict and reduced the verdict to $114,947.99, and (3) granted Lippl's post-trial motion request to correct a mathematical error in the verdict. In a March 6, 2020 *per curiam* order, this Court directed Young to file a *praecipe* to enter the judgment. The judgment was entered on March 10, 2020. On April 14, 2020, Lippl filed a notice of appeal from the entry of judgment against him in the amount of $114,947.99.[4] Both Young and Lippl filed concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and the trial court subsequently filed separate Rule 1925(a) opinions.

Lippl raises the following issues for our review:

---

[4] In a Second Supplemental Order entered on April 1, 2020, our Supreme Court suspended "all time calculations for purposes of time computation relevant to court cases or other judicial business, as well as time deadlines" through April 30, 2020, due to the COVID-19 pandemic. **See In re General Statewide Emergency**, Judicial Docket Nos. 531 and 532, Second Supplemental Order, 4/1/20. Lippl's appeal from the entry of judgment, therefore, was timely filed on April 14, 2020.

- 6 -

1. Whether the trial court erred in refusing to dismiss this case for failure to join an indispensable party, because the case was filed by only one of two persons having a joint interest in the subject matter of the case[?]

2. Whether the trial court erred in denying the request for judgment notwithstanding the verdict, because the verdict was not supported by sufficient evidence[?]

3. Whether the trial court erred in denying the request for judgment notwithstanding the verdict, because of an impermissible variance between the complaint and the theories at trial[?]

Lippl's Brief at 4.

Young raises the following issues for our review:

1. Did the trial court err in reducing the verdict in favor of [Young] by $253,453.15 based on the judgment that was awarded in [Young's] lawsuit against Code.Sys?

2. Where the jury determined that, but for [Lippl's] negligence, [Young] would have obtained an arbitration award in the amount of $432,433.35, did the trial court err in denying [Young's] post-trial motion to mold the verdict to add interest on the award she should have received in the underlying arbitration?

Young's Brief at 11.[5]

We begin by addressing the issues raised by Lippl. All three of Lippl's issues challenge the trial court's denial of his request for judgment notwithstanding the verdict. Our standard of review in such cases is well-settled. An appellate court will reverse a trial court's denial, or grant, of a request for judgment notwithstanding the verdict only when the trial court

_____

[5] For ease of disposition, Young's issues have been re-organized.

abused its discretion or erred as a matter of law. ***Rost v. Ford Motor Co.***, 151 A.3d 1032, 1042 (Pa. 2016).

In his first issue, Lippl challenges the order denying his request for judgment notwithstanding the verdict on the grounds that the trial court failed to join Goldblatt[6] as an indispensable party in Young's legal malpractice action against Lippl. ***Id.*** at 14-29.

The failure to join an indispensable party implicates the trial court's subject matter jurisdiction and presents a question of law. ***Orman v. Mortgage I.T.***, 118 A.3d 403, 406 (Pa. Super. 2015). As such, our standard of review is *de novo* and our scope of review plenary. ***Id.***

> A party is indispensable when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights. If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation. [This Court has] consistently held that a trial court must weigh the following considerations in determining if a party is indispensable to a particular litigation[:]
>
> 1. Do absent parties have a right or an interest related to the claim?
>
> 2. If so, what is the nature of that right or interest?
>
> 3. Is that right or interest essential to the merits of the issue?

---

[6] At the time Young filed a *praecipe* for *writ* of summons to initiate her action against Lippl on October 11, 2012, Young and Goldblatt were engaged in a divorce action. Goldblatt commenced a divorce action against Young on April 28, 2010, and a final divorce decree was entered on April 19, 2016.

> 4. Can justice be afforded without violating the due process rights of absent parties?
>
> In determining whether a party is indispensable, the basic inquiry remains whether justice can be done in the absence of a third party.

*Id.* at 406-407 (quotation marks, original brackets, and citations omitted).

Lippl contends that Young and Goldblatt were both parties to the construction agreement with Custom Homes, that they jointly retained Lippl to represent them in the arbitration action, and that the arbitration award was entered jointly against both Young and Goldblatt and viewed as a joint debt in their subsequent divorce. Lippl's Brief at 21. Lippl argues that, "[i]t follows as a matter of logic that, because the cause of action against Custom Homes, and the adverse result in the litigation with Custom Homes, were shared jointly by Young and Goldblatt, so too is the cause of action for legal malpractice arising from the claimed loss of that joint cause of action." *Id.* at 22 (emphasis omitted). Lippl asserts that Goldblatt is an indispensable party because, *inter alia*, "justice cannot be afforded without violating Goldblatt's rights because [] his interests were not represented, protected, or accounted for in this [legal malpractice action] and the [subsequent] judgment entered[.]" *Id.* at 23.

In determining that Goldblatt was not an indispensable party in Young's legal malpractice action against Lippl, the trial court stated,

> Goldblatt had no rights or interests in [Young's] claim against [Lippl for legal malpractice]. Although Goldblatt was a party to the April 2008 contract with Custom Homes, he subsequently renounced his spousal interest in the property and signed a waiver

of spousal interest and spousal subordination and consent. Additionally, the Custom Homes['] collection action was filed solely against [Young], and she further testified that she alone paid the $64,032.21 award.

Notably, Goldblatt was deposed in this matter and his video deposition was played at trial. Goldblatt expressed no interests or rights in this lawsuit. Though he was aware of the pending litigation, he never asserted any claims against [Lippl]. Goldblatt also testified that he expected [Young] to pay any judgment that resulted from the [arbitration].

Further, [Lippl] specifically acknowledged that his joint retention [by Young and Goldblatt] in no way lessoned the duties [he] owed individually to [Young]. Both [Young] and Goldblatt had[ the right to terminate [Lippl] at any time, either jointly or severally. Moreover, there is no Pennsylvania case law that requires Goldblatt to be joined as a party simply because he and [Young] were co-clients.

Clearly, the basic inquiry in the joinder analysis can be answered in the affirmative. Justice can [be,] and has been[,] afforded without the joinder of [Young's] former spouse as a party in this matter.

Trial Court Opinion, 6/11/20, at 7.

A review of the record demonstrates that Young filed a cause of action against Lippl for legal malpractice arguing that, due to Lippl's professional negligence, Young did not prevail in her prior claim against Custom Homes for the defective construction of her house. Young's Complaint, 12/28/12, at ¶¶19-33. Young's prior action against Custom Homes stemmed from the defective construction of a house that, albeit titled in both Young's and Goldblatt's names, was solely Young's property by virtue of the prenuptial agreement between Young and Goldblatt and the waiver of spousal interest in

- 10 -

the property executed by Goldblatt.[7]  **_See Goldblatt v. Young_**, 2017 WL 3276525, at *13 (Pa. Super. 2017) (unpublished memorandum) (stating, "[t]he only reason [Goldblatt's] name was on the property [deed] was so that [Young] could obtain financing").  It is axiomatic that the legal malpractice cause of action, which derived from Young's loss of her defective construction claims against Custom Homes, was Young's sole cause of action to assert, as well.[8]  We concur with the trial court that Goldblatt had no right or interest in

_____

[7] Goldblatt and Young executed the agreement with Custom Homes for the construction of Young's house on April 12, 2008.  On April 15, 2008, Goldblatt executed the waiver of his spousal interest in the house.

[8] Lippl asserts that, "[b]ecause Young and Goldblatt jointly had a cause of action against Custom Homes, it followed that any debt or adverse judgment associated with the pre-separation lawsuit was also one owed by them jointly." Lippl's Brief at 19.  This contention overlooks several important features of the legal interests at play by the time Young commenced her legal malpractice claim against Lippl.  First, even within the context of the arbitration case, Young's claim for defective construction against Custom Homes was asserted solely in her own right as the only party with an interest in the house.  Second, although Goldblatt may have been jointly liable for breach of contract at the conclusion of the arbitration proceeding because he executed the agreement with Custom Homes along with Young, his liability for the arbitration award did not negate the legal effect of his waiver of his ownership interest in the house.  Third, in view of Goldblatt's waiver of any interest in the house before Young's commencement of the legal malpractice action, Goldblatt lacked any distinct, identifiable legal interest in the outcome of Young's professional negligence claims against Lippl.  In the prior divorce litigation between Young and Goldblatt, this Court reasoned that the mortgage secured by the property was Young's sole responsibility because it stayed with and attached to the property and Goldblatt relinquished any claim or interest he had in the house.  Similarly, we said that Young solely retained any claims for defective construction of the house because such claims stayed with and attached to the property.  Lastly, Young's satisfaction of the arbitration award suggests strongly that she retained an exclusive interest in any recovery stemming from alleged legal malpractice which led to that judgment.

Young's legal malpractice claim because it was directly tied to the real estate, which was solely Young's property. Therefore, Goldblatt was not an indispensable party in the instance case. Consequently, Lippl's first issue is without merit.

Lippl's second issue challenges the order denying his request for judgment notwithstanding the verdict on the grounds that the evidence was insufficient to support a finding of causation. Lippl's Brief at 29-36.

The denial of a request for judgment notwithstanding the verdict based upon insufficient evidence is appropriate if, reading the record in the light most favorable to the verdict winner and affording that party the benefit of all reasonable inferences, a court would conclude that there is sufficient evidence to sustain the verdict. *Rost*, 151 A.3d at 1042. In reviewing a challenge to the sufficiency of the evidence, an appellate court will reject all evidence that does not support the verdict. *Id.*

> In order to establish a claim of legal malpractice, a plaintiff/aggrieved client must demonstrate three basic elements:
>
> > [1.] employment of the attorney or other basis for a duty;
> >
> > [2.] the failure of the attorney to exercise ordinary skill and knowledge; and
> >
> > [3.] that such negligence was the proximate cause of damage to the plaintiff.
>
> An essential element to this cause of action is proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm[,] or the threat of future harm. Damages are considered remote or speculative only if there is uncertainty concerning the identification of the existence of damages rather than the ability to precisely calculate the amount

or value of damages. In essence, a legal malpractice action in Pennsylvania requires the [aggrieved client] to prove that he[, or she,] had a viable cause of action against the party he[, or she,] wished to sue in the underlying case and that the attorney he[, or she,] hired was negligent in prosecuting or defending that underlying case (often referred to as proving a "case within a case").

***Kituskie v. Corbman***, 714 A.2d 1027, 1029-1030 (Pa. 1998) (citations omitted).

Here, Lippl asserts that, "Young's theory of liability at trial was that Lippl should have procured geotechnical testing to convince the arbitrator that the foundation was not built on firm clay" and that if Lippl had procured the geotechnical testing, Young would have prevailed in her cause of action against Custom Homes. Lippl's Brief at 31. Lippl contends that Young "failed to present sufficient evidence that obtaining geotechnical testing would have" caused Young to prevail in her claim against Custom Homes. ***Id.*** Lippl asserts that his failure to procure geotechnical testing of the foundation's soil base was not the reason the arbitrator found in favor of Custom Homes and against Young in the arbitration matter. ***Id.*** at 34. Rather, Young did not prevail in her claim against Custom Homes because Young and Goldblatt wrongfully terminated their agreement with Custom Homes. ***Id.*** at 34.

In finding sufficient evidence to demonstrate the element of causation, the trial court stated,

Attorney Gary Hunt,[Esquire ("Attorney Hunt"),] a civil trial lawyer, was qualified as an expert[9] and opined as to [Lippl's] representation of [Young] during the [arbitration hearing].

. . .

Attorney Hunt ultimately concluded that[] had [Lippl] obtained geotechnical testing[,] he would have been able to show that not only did Custom Homes materially breach the contract, but also that it committed fraud in the process.[10]  Further, the [] Arbitrator would not have found [Young's] termination of Custom Homes to be improper but for [Lippl's] failure to prove the material breach and subsequent fraud.  Based on the testimony of Attorney Hunt, [Young] established her 'case within a case' by proving she had a viable cause of action against Custom Homes.  [Young] also established cause[-]in[-]fact through the opinion of Attorney Hunt that she would have won at the [arbitration hearing] but for [Lippl's] failure to obtain the geotechnical testing to prove the material breach.

The Jury found Attorney Hunt to be credible and answered Questions #2 and #3 of the verdict slip in the affirmative, which read:

[2.] Do you find that, but for [] Lippl's negligence, [Young] would have avoided the Arbitrator's Award in the sum of $64,032.21?

[3.] Do you find that, but for [] Lippl's negligence, [Young] would have prevailed in the Arbitration Action and obtained a monetary award in [her] favor?[]

---

[9] Attorney Hunt was qualified as an expert in litigation, construction law, AAA arbitration, and jury trials.  N.T., 9/18/19, at 10.

[10] In the arbitration matter, Young's causes of action against Custom Homes included a breach of contract claim for failure to construct the home in accordance with the parties' agreement, together with a claim for fraud based upon allegations that Custom Homes invoiced Young for work that had not been completed, including work related to the installation of "a solid foundation."  N.T., 9/18/19, at 29-30.

[Young] established, cause-in-fact by showing that her harm would not have come about but for [Lippl's] negligence.

Trial Court Opinion, 6/11/20, at 9-10 (record citations omitted).

A review of the record demonstrates that, regarding Young's counter-claim against Custom Homes, the Arbitrator stated,

[Young] has made a series of claims related to work that was allegedly defective or not complete. The claims made do not consider the cost to [Custom Homes] in performing this work. The damages sought are based on having an outside contractor perform this work. However, [Young] wrongfully terminated [Custom Homes] and[,] therefore[, Custom Homes] was wrongfully denied the opportunity to correct or complete the work complained of by [Young]. Accordingly, [Custom Homes] is discharged of its obligation to perform under the [construction] contract and these claims are denied.

Trial Exhibit 12C (Award of Arbitrator), at 2 (extraneous capitalization omitted).

In explaining that Lippl's failure to obtain geotechnical testing of the soil conditions supporting the foundation was the proximate cause of Young's inability to obtain a judgment against Custom Homes for its defective construction of her house, Attorney Hunt explained,

if the geotechnical studies had been performed as [Suhrie] said they should have been, then we would have know[n] what they show[ed about the soil conditions underlying the foundation]. That question mark would have been removed. The arbitrator would have heard evidence that this [house was not] built on firm clay. This [house] was built on loose[,] and to a great extent[,] unconsolidated soil[. That is] why the [rear portion of the house] is falling away from the rest of the house[. T]he arbitrator would have had more than sufficient evidence to conclude that there was a material breach of [the construction] contract, and if there was a material breach of this contract[, then] the contract could be terminated. The arbitrator would have had everything the

- 15 -

arbitrator needed to reach the conclusion that there was a material breach, and therefore, the basis that the arbitrator used to essentially dismiss [] Young's claims would have been taken away[. Young would be entitled to a judgment in her favor against Custom Homes].

N.T., 9/18/19, at 66. Attorney Hunt agreed with the Suhrie Report recommendation that geotechnical testing was necessary to identify the cause of continuing settlement of the house and to prove Young's claims against Custom Homes. *Id.* at 36; *see also* Suhrie Report, 3/30/10, at § 4.1.7 (stating, "This type of crack indicates that settlement of the house foundation is occurring toward the rear. This is a potentially serious problem given the amount of fill and the slope of the embankment behind the house. Further geotechnical investigation is required to assess this risk."). GeoMechanics performed geotechnical testing of the soil base underlying the foundation and concluded, *inter alia*, that the fill beneath the house had "low strength and high compressibility" for purposes of foundational support and presented a risk for future differential settlement of the house. *See* Geotechnical Engineering Investigation Report, 2/4/13, at 16. Attorney Hunt opined that the geotechnical testing established that Custom Homes did not excavate to firm clay as required by the construction contract and that the house was built, instead, on loose, unconsolidated fill. N.T., 9/18/19, at 38-39; *see also* Construction Contract – Description of Materials, 2/21/08 (requiring, that Custom Homes excavate "to firm clay"). Attorney Hunt explained that Custom Homes' failure to excavate to firm clay constituted a material breach of the construction contract. N.T., 9/18/19, at 58. Moreover, Custom Homes

invoiced Young for the additional charge of over-excavation to reach firm clay, which amounted to fraud in Attorney Hunt's opinion. *Id.* at 61-62. Attorney Hunt opined to a reasonable degree of legal and professional certainty that Lippl failed to identify the seriousness of the Suhrie Report recommendation to obtain geotechnical testing of the soil base underlying the foundation to determine the cause of continuing settlement prior to the arbitration hearing. *Id.* 68-69. Explaining Custom Homes' election to build the house on loose, unconsolidated fill and its failure to excavate to firm clay were critical components of the arbitration hearing, Attorney Hunt explained, and Lippl's failure to obtain the geotechnical testing, despite the Suhrie Report recommendation, was the reason Young did not prevail in her counter-claims against Custom Homes. *Id.*

In considering all of the evidence in the light most favorable to Young, as verdict winner, we find there was sufficient evidence to allow the jury, as trier-of-fact, to find that Lippl's legal negligence was the proximate cause of Young's failure to prevail in her causes of action against Custom Homes. Consequently, Lippl's second issue is without merit.

Lippl's third issue challenges the order denying his request for judgment notwithstanding the verdict on the grounds that there was a material variance between Young's complaint and proof at trial. Lippl's Brief at 36-48.

> A variance denotes difference and in reference to legal proceedings[,] it refers to a disagreement or difference between the allegations made and the proof shown, not in the sense that there is a failure of proof, but that, contrary to the fundamental principle of good pleading and practice, the proof fails to materially

- 17 -

correspond to the allegations. A material variance consists of a departure in the evidence from the issues on which the cause of action must depend.

For purposes of determining whether a claimed or apparent discrepancy between pleadings and proof constitutes a variance, the entire pleadings and evidence should be considered. Generally, in order to constitute a variance, the discrepancy must exist between the allegations and proofs of the particular party, with the result that a party is not permitted to introduce evidence that is inconsistent with or fails to correspond to the allegations made by that party.

The modern rules of pleading and practice are relatively liberal. Consequently, the impact of variance may be diminished by the preference for a liberal[,] if not informal[,] evaluation of pleadings emphasizing the determination of cases based upon their merits rather than based on mere technicalities, which policy, for example, may allow a party to cure a variance by offering, during or after trial, to amend the pleadings to conform to the proof.

General pleading allegations which are not objected to because of their generality, may have the effect of extending the available scope of a party's proof, such that the proof would not constitute a variance, beyond that which the party might have been permitted to give under a more specific statement.

*Graham v. Campo*, 990 A.2d 9, 13-14 (Pa. Super. 2010) (ellipsis omitted), *appeal denied*, 16 A.3d 504 (Pa. 2011). "Although the *allegata* and *probata* may not entirely agree, **if the defendant is not misled**, and the variance does not in any way affect the trial on its merits, or set up a different cause of action, or **impose any different burden on the defendant**, the variance will not be considered material." *Higgins Lumber Co. v. Marucca*, 48 A.2d 48, 49-50 (Pa. Super. 1946) (emphasis in original).

Here, Lippl contends that, "while Young [**pleaded**] that Lippl failed to properly pursue **negligence** claims in the arbitration action, and that her

[house] was a **total loss**, [Attorney] Hunt instead faulted Lippl for not properly developing **fraud and breach of contract** claims and not proving how the [house] **could be repaired**." Lippl's Brief at 38 (emphasis in original). Lippl argues that Young's complaint set forth a claim for legal malpractice premised on the theory that because Lippl failed to obtain geotechnical testing of the soil base supporting the foundation, Young was unable to prevail against Custom Homes on a cause of action for negligence. *Id.* at 42. Lippl asserts that at trial, however, Young introduced evidence that, due to Lippl's legal malpractice, Young was unable to prevail against Custom Homes for claims of breach of contract and fraud. *Id.* Lippl contends the resulting variance between Young's pleadings and her proof at trial was material and extremely prejudicial. *Id.* at 41-42.

Pennsylvania courts have long-held as a general principal that "plaintiffs should not be forced to elect a particular theory in pursuing a claim" and risk the "possibility that meritorious claims will fail because the wrong legal theory was chosen." ***Schreiber v. Republic Intermodal Corp***, 375 A.2d 1285, 1291 (Pa. 1977) (citation omitted). "Although a plaintiff is not required to specify the legal theory underlying the complaint, the material facts which form the basis of a cause of action must be alleged." ***Lampus v. Lampus***, 660 A.2d 1308, 1312 n.2 (Pa. 1995).

In the case *sub judice*, Young pleaded, in pertinent part, the following material facts in support of her cause of action for professional negligence,

8. Although [Lippl] specifically raised a counter[-]claim premised upon negligent construction of the [house], he did not pursue this cause of action, instead choosing to focus on economic damages caused by [Custom Homes].

9. During his representation of [Young, Lippl] retained [Suhrie] to provide expert analysis and opinion for [Young's] defenses and affirmative claims.

. . .

11. [Suhrie] specifically opined that further geotechnical investigation was required to assess the risk of foundation movement.

12. [Lippl] did not obtain any further geotechnical investigation.

13. [Young] requested that [Lippl] make further investigation into the foundation issues as recommended by [the Suhrie Report], but [Lippl] made no further inquiries.

. . .

23. As a result of [Lippl's] representations [as an attorney that specialized in construction litigation, Young] retained [Lippl's] services to represent her in the underlying action.

24. During the cour[se] of his representation, [Lippl] learned, through his retained expert witness, that there may be structural issues caused by problems with the manner in which the foundation was engineered and constructed.

25. [Lippl's] retained expert specifically recommended that further geotechnical evaluation be performed to determine the exact issues causing settlement problems on the property.

26. [Lippl] ignored this recommendation and did not retain a geotechnical report.

27. [Lippl] ignored [Young's] request to further investigate the recommendation that he retain a geotechnical report.

28. [Lippl,] through his training and obligations as an attorney[,] knew, or should have known, that a geotechnical report was needed to determine the exact nature of problems with the foundation and uncompacted fill materials.

29. Had [Lippl] retained a geotechnical report, he would have learned that the [house] was built upon uncompacted fill materials and that due to this fact, the [house] would never be approved for occupancy.

Young's Complaint, 12/28/12, at ¶¶8-9, 11-13, 23-29 (record citations and extraneous capitalization omitted). Young alleged that as a result of Lippl's professional negligence in failing to obtain geotechnical testing of the soil base underlying the foundation, she was precluded from bringing a cause of action against Custom Homes, including a negligence action, for the total loss of her house. *Id.* at ¶¶30(d) and 31.

A review of Young's complaint demonstrates that she set forth the material facts in support of her claim against Lippl for professional negligence. Specially, Young alleged that Lippl owed her a duty as her attorney (a fact which is not contested by Lippl), that Lippl did not exercise ordinary skill and knowledge in his representation of Young when he failed to obtain the recommended geotechnical testing, and that because of Lippl's failure to obtain the geotechnical testing, Young was precluded from bringing a viable cause of action against Custom Homes. We concur with the trial court that Young was not required to set forth her legal theory as to the precise cause of action or causes of action she was precluded from bringing against Custom

Homes as a proximate cause of Lippl's professional negligence.[11]  Therefore,

Lippl's third issue is without merit.

We now turn to Young's cross-appeal and the issues raised therein.  In

her first issue, Young claims the trial court erred when it granted, in part,

Lippl's request for judgment notwithstanding the verdict and reduced the

verdict by $253,453.15 on the grounds that Young previously recovered these

damages in her suit against Code.Sys.  Young's Reply Brief at 12-31.

This issue raises a question of law for which our standard and scope of

review are well-settled.  We review a trial court's decision to apply the one

satisfaction rule and off-set the jury verdict for an abuse of discretion or error

of law.  **Baker v. ACandS**, 755 A.2d 664, 667 n.4 (Pa. 2000).  Our scope of

review for such matters is plenary.  **Id.**  Under the long-standing Pennsylvania

precedent known as the "one satisfaction rule," an injured party may only

recover one satisfaction for the same injury.  **Garman v. Angino**, 230 A.3d

1246, 1256 (Pa. Super. 2020); **see also Brown v. City of Pittsburgh**, 186

A.2d 399, 402 (Pa. 1962) (stating, "[i]t has long been the law that for the

same injury, an injured party may have but one satisfaction, and the receipt

of such satisfaction, either as payment of a judgment recovered or

consideration for a release executed by [the injured party], from a person

_____

[11] Moreover, Lippl was aware that Young was unsuccessful in her advance of claims that Custom Homes breached its contract and committed fraud in connection with the construction of the home because these causes of action were set forth by Lippl as counter-claims in the arbitration matter.

liable for such injury necessarily works a release of all others liable for the same injury" (citation omitted)).

Here, Young contends that, "the one-satisfaction rule only applies where one party's liability is 'predicated upon the negligence of another.'"  Young's Reply Brief at 14 (citation omitted).  Young asserts that Lippl's liability for legal malpractice is predicated, not on Code.Sys's negligence in failing to properly inspect the foundation and its construction, but, rather, on Custom Homes' defective construction of the foundation and its failure to dig to firm clay.  *Id.* at 13.  Young argues that Lippl is not entitled to a set-off of the jury verdict entered against him by the amount Young received in her settlement with Code.Sys.  Instead, Young characterizes the settlement with Code.Sys as a "fortuitous collateral remedy" and under the collateral source rule,[12] Lippl is

_____

[12] We find Young's reliance on the collateral source rule to be misplaced.  The collateral source rule "prohibits a defendant **in a personal injury action** from introducing evidence of the plaintiff's receipt of benefits from a collateral source [(for example, insurance coverage, social security benefits, unemployment compensation, or employee benefits, such as accumulated sick pay)] for the same injuries which are alleged to have been caused by the defendant.''  **Simmons v. Cobb**, 906 A.2d 582, 585 (Pa. Super. 2006) (citation omitted, emphasis added) (stating, the collateral source rule is intended to protect tort victims).  "[T]he primary focus of the collateral source rule is to avoid the preclusion or diminution of the damages otherwise recoverable from the wrongdoer based on compensation recovered from a collateral source [and], in some instances, the violation of the collateral source rule can affect the jury's deliberation and decision on the issue of liability."  **Deeds v. Univ. of Pennsylvania Med. Ctr.**, 110 A.3d 1009, 1013 (Pa. Super. 2015).  Moreover, in the instant case, which does not involve a personal injury cause of action, preclusion of evidence of the settlement with Code.Sys for purposes of off-setting the jury verdict in the instant case runs afoul of the one satisfaction rule.

barred from "taking advantage of the fortuitous existence of a collateral remedy." *Id.* at 17-18.

Lippl contends that in a legal malpractice case, the aggrieved client may only recover actual losses. Lippl's Reply Brief at 67. Lippl asserts that the jury verdict in the instant case represents the damages Young would have recovered from Custom Homes for, *inter alia*, its improper construction of the foundation, but for Lippl's legal malpractice. *Id.* at 68. Lippl contends Young recovered damages for the improper construction of the foundation in her settlement with Code.Sys and, therefore, is precluded from receiving more than one recovery for the same injury. *Id.* at 68-69.

In off-setting the jury verdict by $253,453.13 pursuant to the one-satisfaction rule, the trial court explained,

> [Young] has misapplied the [one-satisfaction] rule. [Lippl's] liability for "work defective due to structural/foundation issues and repairs" is predicated upon Code.Sys's negligence in failing to require a caisson foundation. It is irrelevant that [Young] won against Code.Sys on a breach of contract theory because the breach of a contractual duty may be and, in fact, was plead[ed] in the alternative as negligence. [Young's] damages in both this case and the Code.Sys litigation included repairs to the foundation. In her suit against [Lippl, Young] would not have recovered these damages but for Code.Sys's failure to require a caisson foundation system.
>
> [T]he jury did not find liability against a party who has not been sued. As noted above, the jury heard no evidence related to Code.Sys [in the instant case]. Therefore, it could not find Code.Sys liable for any damages. Instead, the [trial c]ourt determined that [Young] had been compensated for damages caused by Code.Sys's failure to require the installation of [a] proper foundation.

- 24 -

[Young] further argues that there is no way to know which repairs the Code.Sys jury determined that Code.Sys was responsible for and that, likewise, there was no way to know which repairs this jury found to be caused by [Lippl]. However, [Young] cited to no law that required the [trial c]ourt to complete a side-by-side comparison of the damages that resulted from the "same injury." It was, therefore, proper for the [trial c]ourt to apply the ["one-satisfaction] rule" to reduce the verdict by the award for "work defective due to structural/foundation issues and repairs." Again, this is the same injury [Young] recovered damages for from Code.Sys.

Trial Court Opinion, 3/16/20, at 7-8.

A review of the record demonstrates that in her action against Code.Sys, Young alleged that Code.Sys failed to properly inspect and identify serious deficiencies in the construction of the foundation, which ultimately led to Young's failure to obtain a certificate of occupancy and the certification of the house as uninhabitable. A jury awarded Young $412,750.00[13] for damages sustained by Young as a result of Code.Sys's breach of contract and negligence.[14] In the instant case, Young was awarded $253,453.15 for Custom Homes' defective construction work involving "structural/foundational issues and repairs." Lippl's liability in the amount of $253,453.15 is predicated upon the defective construction performed by Custom Homes that would have

_____

[13] Young settled her suit against Code.Sys, post-trial, for $455,250.00.

[14] Young's complaint sounded in a cause of action for negligence based upon Code.Sys's failure, *inter alia*, to properly inspect and identify the construction deficiencies. Young also brought a cause of action for breach of the contract Code.Sys had with the municipality in which the house was built and to which Young was a third-party beneficiary.

been discoverable but for Lippl's failure to obtain geotechnical testing to identify Custom Homes' failure to reach firm clay prior to installing the foundation.[15] The amount awarded to Young due to Lippl's legal malpractice compensated Young for damages due to Custom Homes' defective construction of the foundation. Similarly, the amount awarded to Young due to Code.Sys's negligence and breach of contract compensated Young for damages due to Custom Homes' defective construction of the foundation. The one-satisfaction rule prevents Young from recovering more than once for claims that centered upon Custom Homes' defective construction of the foundation. We concur with the trial court that the one-satisfaction rule requires the verdict in the case *sub judice* to be reduced by the amount already recovered for the defective construction of the foundation, that is to say $253,252.15. Therefore, Young's first issue is without merit.

Young's second issue challenges the trial court's order denying her post-trial motion to mold the verdict to include post-arbitration interest on the award Young would have received in the underlying arbitration action but for Lippl's legal malpractice.[16] Young's Brief at 51-58.

---

[15] The trial court stated incorrectly that Lippl's liability was predicated upon Code.Sys's failure to require a caisson foundation.

[16] Although Young's Rule 1925(b) statement also challenges the trial court's order denying pre-arbitration interest, Young failed to set forth this issue in her statement of questions presented or develop an argument in support thereof in her brief. Therefore, Young waived her challenge to the trial court's denial of a request for pre-arbitration interest. ***See Harkins v. Calumet***

Our standard of review of a trial court's decision to deny, or grant, a request to include post-judgment interest is "whether the trial court palpably abused its discretion." ***Zimmerman v. Harrisburg Fudd I, L.P.***, 984 A.2d 497, 500 (Pa. Super. 2009), *appeal denied*, 992 A.2d 890 (Pa. 2010).

In a legal malpractice claim, the aggrieved client is entitled to recover damages equal to the difference between what the aggrieved client did recover, if any, and what the aggrieved client would have recovered but for the attorney's negligence. ***Rizzo v. Haines***, 555 A.2d 58, 68-69 (Pa. 1989). Section 8101 of the Pennsylvania Judicial Code provides that, "[e]xcept as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award." 42 Pa.C.S.A. § 8101. "Statutory post-judgment interest is a matter of right where damages are ascertained by computation" and the prevailing party is "entitled to interest on a judgment for a specific sum of money from the date of the verdict." ***Pittsburgh Constr. Co. v. Griffith***, 834 A.2d 572, 590-591 (Pa. Super. 2003), *appeal denied*, 852 A.2d 313 (Pa. 2004). "[F]or purposes of computing interest, judgment and verdict are synonymous, and the date from which interest accrues is the date of the

---

***Realty Co***, 614 A.2d 699, 703 (Pa. Super. 1992) (stating, issues not identified in the statement of questions or issues identified but not developed in the argument section of the brief are waived).

verdict, not the date judgment is finally entered." **Hutchison v. Luddy**, 946 A.2d 744, 750 (Pa. Super. 2008) (citation omitted).

Here, Young argues that her request for post-arbitration interest on the arbitration damages she would have been awarded but for Lippl's legal malpractice "is not being requested by direct operation of Section 8101" but, rather, "is being sought as a component of damages in the context of a 'case within a case' legal malpractice claim." Young's Brief at 53. Young contends that the trial court's denial of interest as a component of damages for her "case within a case" legal malpractice claim incentivizes attorneys, such as Lippl, "to resist settlement" and "strongly encourage[s attorneys] to engage in extensive litigation – simply in an effort to 'out last' a malpractice plaintiff, like [] Young." **Id.** at 54. Young asserts that if she had been awarded arbitration damages, absent Lippl's legal negligence, she would been entitled to interest pursuant to Section 8101. **Id.** at 57. Because the "interest is [] clearly a loss that [] Lippl caused, [] it is properly recoverable as an element of damages in the 'case with a case'" legal malpractice action. **Id.**

In denying Young's request for post-arbitration interest, the trial court stated,

> [Young] is not entitled to pre-arbitration or post-arbitration interest. [Lippl] did not hold money or property which belonged in good conscience to [Young]. [Young] also waited more than two years to file suit against [Lippl] following the arbitration award. It would be unjust for the [trial c]ourt to require [Lippl] to pay interest that accrued during that time.
>
> Moreover, [Young] has not asserted that [Lippl] caused any undue delay in the proceedings that would warrant such an excessive

amount of interest on the judgment. The total molded award in this [legal malpractice] case was $114,947.99. It would be grossly unjust for the [trial c]ourt to award more than $800,000.00 in interest on the judgment.

Last, [Young] is not entitled to post-[arbitration] interest from the date of the arbitration award. The date of the award or verdict referenced in 42 Pa.C.S.A. § 8101 means the verdict in this [legal malpractice] case, not the [] arbitration award. [Young] cited no support for such an interpretation.

Accordingly, [Young] is entitled to post-judgment interest solely from the date of the jury verdict in [the legal malpractice] case. However, [Young] never requested that [the trial c]ourt award her post-judgment interest. Rather, [Young] requested pre-arbitration and post-arbitration interest [be awarded in her post-trial motion].

Trial Court Opinion, 3/16/20, at 10 (emphasis in original).

Young's issue presents a question of first impression as to the application of Section 8101 as it applies within the context of a "case within a case" legal malpractice claim. As the proper interpretation, and application of a statute, is a pure question of law, our standard of review is de novo, and our scope of review is plenary. **Grimm v. Universal Med. Servs., Inc.**, 156 A.3d 1282, 1286 (Pa. Super. 2017) (citation omitted).

A fundamental principal of a successful claim for legal malpractice is to award the aggrieved client what they would have received if the underlying matter had been litigated successfully but for the attorney's negligence. **See Rizzo**, 555 A.2d at 68-69. A prevailing party is entitled, as a matter of right, to interest at the lawful rate from the date of the verdict until such time as payment of the judgment is made to the non-prevailing party. **See** 42 Pa.C.S.A. § 8101; **see also Perel v. Liberty Mut. Ins. Co.**, 839 A.2d 426,

430 (Pa. Super. 2003) (stating, "for purposes of calculating post[-]judgment interest, payment necessarily occurs when the amount of the verdict (or an otherwise agreed upon amount) - whether sent by mail, courier, electronic funds transfer, or other mode of delivery - is received by the creditor). Because the interest is calculated upon a "specific sum of money" awarded, it is axiomatic that within the context of a "case within a case" legal malpractice action, the aggrieved client is entitled to interest calculated on the specific amount awarded in the legal malpractice case from the date of the verdict in the legal malpractice case and not the prospective date of a verdict in the underlying cause of action.

In the case *sub judice*, we concur with the trial court that pursuant to Section 8101, Young "is entitled to post-judgment interest solely from the date of the jury's verdict" in the legal malpractice case.  Trial Court Opinion, 3/16/20, at 10.  The trial court abused its discretion, however, in finding that Young "never requested that [the trial c]ourt award her post-judgment interest."  **Id.**  A review of Young's post-trial motion demonstrates that her calculation of interest encompassed the period from the date of the jury verdict in the instant case through the date her post-trial motion was filed, October 7, 2019.  Young's Post-Trial Motion, 10/7/19, at 4.  Young is entitled, therefore, to interest calculated from the date of the jury verdict, September 26, 2019, until such date as the amount of the judgment is paid by Lippl to Young.  **See** 42 Pa.C.S.A. § 8101.  Consequently, we remand this case for the limited purpose that the trial court calculate and award post-judgment

interest, pursuant to Section 8101, on the judgment totaling $114,947.99 from the date of the jury verdict in the instant case through and including the date on which payment of the judgment is received by Young from Lippl.

Judgment affirmed. Case remanded for award of post-judgment interest. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/2021