J-A21039-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KENDRA L. NOLAN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF CHARLES NOLAN AND SURVIVING CO-ADMINISTRATOR OF THE ESTATE OF KLN, DECEASED | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| | : | No. 1327 MDA 2024 |
| v. | : : : | |
| WELLSPAN MEDICAL GROUP, SUMMIT PHYSICIAN SERVICES AND WAYNESBORO HOSPITAL T/D/B/A WELLSPAN WAYNESBORO HOSPITAL | : : : : : | |

Appeal from the Judgment Entered October 31, 2024
In the Court of Common Pleas of Franklin County Civil Division at No(s):
2020-03254

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: OCTOBER 28, 2025**

Kendra L. Nolan, Plaintiff/Appellant, appeals from the judgment entered in the Court of Common Pleas of Franklin County after a jury returned a defense verdict in her wrongful death/survival action arising from the delivery room stillbirth of her son, KLN.  At issue is whether the trial court erroneously granted medical provider Defendants/Appellees' motion *in limine* to preclude evidence relating to medical staff's post-delivery resuscitation efforts because such evidence would be at variance with Nolan's theory of liability articulated

_____

[*] Former Justice specially assigned to the Superior Court.

in her *Second Amended Complaint* (hereinafter, "*SAC*"). After careful consideration, we affirm.

The trial court has authored an opinion setting forth the procedural history and addressing the facts offered in Ms. Nolan's *SAC*:

> The governing pleading in this case is the Plaintiff's *Second Amended Complaint* (*SAC*), filed March 22, 2021. Prior to trial, the Defendants filed a motion *in limine* seeking to exclude any evidence critical of resuscitation efforts performed upon KLN after his delivery. **See** Motion *in Limine*, filed April 18, 2024. ¶¶ 37-60. The Plaintiff opposed the motion. **See** Response, filed May 1, 2024. The [trial court] granted the motion. **See** Order (May 9, 2024), ¶ 1.
>
> The Plaintiff moved for reconsideration. **See** Motion for Reconsideration, filed May 17, 2024. The [trial court] granted reconsideration and directed counsel to appear for oral argument on June 13, 2024. After oral argument, the trial court affirmed the Order (May 9, 2024). **See** Order (June 13, 2024).
>
> The *SAC* was tried before a jury from June 17, 2024, through June 21, 2024. The jury ultimately returned a verdict in favor of the Defendants. **See** Verdict Slip, June 21, 2024.
>
> The Plaintiff filed [a] Motion for Post-Trial Relief . . . on July 1, 2024. The Defendants filed their Response on July 5, 2024[, and both parties submitted briefs supporting their respective positions.]
>
> [Plaintiff's motion for post-trial relief presented the question of] whether the trial court erred in granting the Defendants' Motion *in Limine* to preclude evidence critical of post-birth resuscitation efforts. [] The Defendants' Motion *in Limine* challenged such evidence as being materially at variance from the *SAC*. **See** Motion *in Limine*, filed April 18, 2024.
>
> The Defendants asserted that the *SAC* did not raise any claims relating to the neonatal care of KLN. **See** Motion *in Limine*, ¶¶ 37-60. The Defendants noted that almost all of the factual assertions relating to the alleged negligence [pertained to the time

in which KLN was] "*in utero*," *i.e.*, prior to KLN's birth. **Id**. [Their motion offered that the] only post-delivery factual allegation was that "attempts at resuscitation were unsuccessful, and KLN was pronounced dead at 7:51 a.m." Motion *in Limine*, ¶ 47; **see also** *SAC*, ¶ 19. [According to the Motion,] [e]very other factual reference or legal accusation was limited to the "in utero" care of KLN. **See** Motion *in Limine*, ¶ 38; see also *SAC*, ¶¶ 4-5, 9-18, 23-26, 35-38, 48-49, 59-60. Therefore, the Defendants argued, evidence criticizing post-delivery care varied materially from the *SAC*. **See** Motion *in Limine*.

The Plaintiff argued that her experts, specifically Jonathan Cronin, M.D. and Heather Murphy, CNM, placed the Defendants on notice that post-delivery care was at issue in this case. **See** Response, filed May 1, 2024. The Plaintiff pointed to a legal conclusion in the *SAC* as adequately placing the Defendants on notice of the post-delivery claim. **See** Brief in Opposition, filed May 1, 2024, unpaginated 5. Specifically, the Plaintiff's [sic] argued their general legal conclusion, that the Defendants' employees and agents were negligent by "failing to properly and/or adequately resuscitate KLN," shows the evidence is not materially divergent from the *SAC*. **Id.**, pp. 5-6. The Plaintiff further made calls for this case to be tried "upon the merits" rather than decided on mere technicalities." **Id**.

Trial Court Opinion ("TCO"), at 1-3.

After considering party arguments on the point at issue, the trial court concluded that Plaintiff Nolan's *SAC* did not plead facts that would permit her to advance a theory of negligent post-delivery resuscitation efforts. Because her *SAC* repeatedly alleged negligent care administered to her "*in utero* son,"[1]

---

[1] To support its conclusion that Plaintiff Nolan, herself, believed this case was about the *in utero* care KLN received, the trial court opinion directs the reader to Plaintiff Nolan's proposed *voir dire*, which stated, "This lawsuit involves a claim by [the Plaintiff] against [the Defendants] for claims they were negligent in the care provided to Kendra Nolan **leading up to the delivery of her son, KLN**." **See** TCO at 5 (quoting Plaintiff's Proposed *Voir Dire*, filed May 17, 2024, ¶ 6) (emphasis added) (balance omitted).

the trial court reasoned that it could not discern facts elsewhere asserting post-delivery/neo-natal stage negligence:

> Reading the *SAC* as a whole (as we must), we did not err in granting the Defendant's Motion *in Limine*. The Plaintiff does not allege a single fact after KLN was delivered. **See** SAC, ¶¶ 9-20. We are not persuaded by the Plaintiff hanging her hat on paragraph 19, which states, "Attempts at resuscitation were unsuccessful, and KLN was pronounced dead at 7:51 a.m."
>
> First, paragraph 19 is not an assertion of fact relating to the care provided to KLN after his birth (as opposed to the result of that care). Secondly, we are mandated to consider paragraph 19 in the context of the entire *SAC*. As relating to KLN, every allegation of negligence was specifically limited by the Plaintiff to the care provided to [KLN] **in utero**. **See** *SAC*, ¶¶ 4-5, 23-25, 35-37, 48-49, 60. Reading the *SAC* as a whole, it is clear and without doubt that the claims relating to KLN were for pre-delivery, *i.e.*, *in utero*, alleged negligence.
>
> The Plaintiff also argues the Defendants were on notice of a post-delivery negligence claim by virtue of paragraphs 26(h), 38(h), 49(g), and 60(h), of the *SAC*. These subparagraphs state conclusions of negligence by "failing to properly and/or adequately resuscitate KLN." Taking these allegations in a vacuum, as the Plaintiff invites us to do, contravenes the requirement that the [trial court] read the *SAC* as a whole. Pointedly, each of these conclusions of negligence is specifically limited to the "in utero" care of KLN. **See** *SAC*, ¶¶ 26, 38, 49, 60. Further, "resuscitation" efforts in this matter were clearly those attempted while KLN was in utero; the Plaintiff stated no fact anywhere in the *SAC* as to "resuscitation" efforts post-delivery. **See** SAC , ¶¶ 9-20.

TCO, at 5.

Accordingly, the trial court ruled that because Plaintiff's *SAC* raised negligence claims focused exclusively on the pre-delivery medical care provided to KLN while he was "in utero," Plaintiff's proposed trial evidence critical of post-delivery care represented an inadmissible material variance

from the *SAC* and was otherwise barred by the statute of limitations, which had run prior to Plaintiff's attempt to effectively amend the pleadings by introducing a new claim focused on the post-delivery phase. This appeal followed.

Appellant Nolan presents the following questions for this Court's consideration:

1. Whether the Trial Court harmfully erred and abused its discretion in granting Appellee's Motion *in Limine* to preclude evidence concerning the performance of the neonatal resuscitation as it was a material variance from the pleadings; and

2. Whether the Trial Court harmfully erred and abused its discretion in granting Appellee's Motion *in Limine* to preclude plaintiff's expert from testifying concerning the neonatal resuscitation as it was a material variance from the pleadings; and,

3. Whether the Trial Court harmfully erred and abused its discretion in denying Appellant's Post-Trial Motion for New Trial, where Appellant established that the claim and evidence concerning the neonatal resuscitation was not in material variance from the pleadings and the Appellees would not be prejudiced by its inclusion.

Brief for Appellant, at 4.

Appellant's three issues turn on the single question of whether the trial court committed reversible error through its pretrial evidentiary ruling that deemed inadmissible proposed evidence that medical staff's neonatal, post-delivery resuscitation efforts fell below the professional standard of care. In so ruling, the trial court granted Appellees' motion *in limine* that sought

preclusion of such evidence on the argument it would represent an inadmissible material variance from the pleadings contained in Plaintiff Nolan's *SAC*, which, Defendants/Appellees maintained, addressed only the care delivered to Ms. Nolan's "in utero son." After careful review, we discern no error with the trial court's ruling granting Defendants/Appellees' motion *in limine*.

We have articulated our scope and standard of review for evidentiary rulings as follows:

> We review a trial court's evidentiary decisions for an abuse of discretion. In this context, discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. To reverse the trial court, th[is C]ourt must consider all the evidence in the light most favorable to the appellee and conclude that the verdict would be changed if another trial were granted.

*Hassel v. Franzi*, 207 A.3d 939, 950 (Pa. Super. 2019) (internal citations, quotations, and some brackets omitted).

> A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury. A trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review.

*Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa. Super. 2014) (internal citations and quotations omitted). *See also Emory v. Univ. Fam. Prac.*, No.

1189 EDA 2024, 2025 WL 1683461, at *4 (non-precedential decision) (Pa. Super. Ct. June 16, 2025).[2]

On matters involving an alleged variance between the complaint and proposed evidence that would prove a different theory based on different factual allegations, we have observed. "It is well settled that a variance between the pleadings contained in a plaintiff's complaint and the theory the party later attempts to prove at trial may result in preclusion of the new theory if it constitutes a new cause of action and is prejudicial to the defense. ***Taylor v. Just About Me Learning Acad., LLC***, 339 A.3d 393 (non-precedential decision) (Pa. Super. Ct. 2025), reargument denied (June 20, 2025) (quoting ***Reynolds v. Thomas Jefferson University Hospital***, [676 A.2d 1205, 1210 (Pa. Super. 1996)]; ***Rachlin v. Edmison***, 813 A.2d 862, 871-72 (Pa. Super. 2002).

> This Court has set forth the law of variance more fully, as follows:
>
> A variance denotes difference and in reference to legal proceedings[,] it refers to a disagreement or difference between the allegations made and the proof shown, not in the sense that there is a failure of proof, but that, contrary to the fundamental principle of good pleading and practice, the proof fails to materially correspond to the allegations. A material variance consists of a departure in the evidence from the issues on which the cause of action must depend.
>
> For purposes of determining whether a claimed or apparent discrepancy between pleadings and proof constitutes a variance, the entire pleadings and evidence should be considered.

---

[2] Under Pa.R.A.P. 126(b), we may cite and rely on non-precedential decisions filed after May 1, 2019, for their persuasive value.

> Generally, in order to constitute a variance, the discrepancy must exist between the allegations and proofs of the particular party, with the result that a party is not permitted to introduce evidence that is inconsistent with or fails to correspond to the allegations made by that party.
>
> The modern rules of pleading and practice are relatively liberal. Consequently, the impact of variance may be diminished by the preference for a liberal[,] if not informal[,] evaluation of pleadings emphasizing the determination of cases based upon their merits rather than based on mere technicalities, which policy, for example, may allow a party to cure a variance by offering, during or after trial, to amend the pleadings to conform to the proof.
>
> General pleading allegations which are not objected to because of their generality, may have the effect of extending the available scope of a party's proof, such that the proof would not constitute a variance, beyond that which the party might have been permitted to give under a more specific statement.

*Young v. Lippl*, 251 A.3d 405, 418 (Pa. Super. 2021) (quoting *Graham v. Campo*, 990 A.2d 9, 13-14 (Pa. Super. 2010), *appeal denied*, 16 A.3d 504 (Pa. 2011)).

Relief from a variance is warranted only where the variance is material and prejudices the defendant. That is, even where the things alleged and the things proven "may not entirely agree, if the defendant is not misled, and the variance does not in any way affect the trial on its merits, or set up a different cause of action, or impose any different burden on the defendant, the variance will not be considered material." *Lippl*, 251 A.3d at 418-19 (record citation and emphases omitted). A variance is not material where it "merely adds to or amplifies the original complaint." *Graham*, 990 A.2d at 14 (citation and emphasis omitted). *See also Kline v. Phoenixville Hosp. Co., LLC*, 336 A.3d 1023 (Pa. Super. 2025), *reargument denied* (June 5, 2025).

In the case *sub judice*, Appellant Nolan argues the "Statement of Material Facts" section of her *SAC* contained paragraphs that provided notice of her theory on the timing of the resuscitation efforts placed in issue and supported her request to introduce evidence of neonatal resuscitation efforts:

18. KLN was delivered at 7:08 a.m. He was limp, pale, and had no respirations or heart rate.

19. Attempts at resuscitation were unsuccessful, and KLN was pronounced dead at 7:51 a.m.

SAC at ¶¶ 18 and 19.

Appellant argues that there is no other reference to resuscitation made in the Statement of Material Facts, and she adds, "there is no mention of *in utero* resuscitation or even mention of actions that would be otherwise undertaken to prove *in utero* resuscitation, as it was not contemplated by the Appellant." Brief of Appellant at 23.

Appellees argue that the record belies her claim because the "[*SAC*], by its terms, does not include any claims regarding the post-delivery, neonatal care that KLN received after he was removed from the womb. Therefore, any testimony in support of a liability theory critical of the post-delivery, neonatal interventions would have been impermissible material variance from the pleadings." Brief of Appellees, at 11.

Our review of the *SAC* finds support for both the trial court's opinion and Appellees' argument that the above-enumerated statement at its Paragraph 19, concerning resuscitation efforts, is generic and unspecific as to timing,

whereas the statement of "particular" facts alleged in each Count of the *SAC*—

including the alleged fact of failing to resuscitate KLN properly—specifically

described a breach of duty owed to Nolan's "*in utero* son" at the moment:

> The employees, servants and/or agents of [named Defendant] **breached the duty of care to** Kendra Nolan and **her *in utero* son, KLN, in one or more of the following particulars:**
>
>     a. Failing to timely recommend, order and/or perform a cesarean section:
>
>     b. Failing to properly interpret the fetal heart tracings and/or failing to appreciate the significance of the fetal heart tracings;
>
>     c. Failing to recognize and/or appreciate the danger to the *in utero* child of the decelerations;
>
>     d. Failing to properly communicate and/or advise Plaintiff Kendra Nolan of the significance of the decelerations and/or the danger to her *in utero* child;
>
>     e. Failing to properly and/or adequately have the necessary staff and personnel present for the emergency cesarean section, including from anesthesia and/or pediatrics;
>
>     f. Failing to properly and/or timely call for appropriate providers to be present for the cesarean section, including from anesthesia and/or pediatrics;
>
>     g. Failing to timely and/or appropriately respond to a call for an emergence cesarean section; and
>
>     **h. Failing to properly and/or adequately resuscitate KLN.**

*SAC* at Count I ¶¶ 26 a. - 26 h; Count II ¶¶ 38 a. – h.; Count III ¶¶ 49 a. – h.; Count IV ¶¶ 60 a. – h. (emphasis added).

When read in its entirety, the *SAC*'s list of particulars offered to support each count against Defendants sets forth the specific alleged fact that Defendants did not properly or adequately resuscitate *in utero* KLN. Accordingly, we discern no error with the trial court's evidentiary ruling granting Defendants/Appellees' motion *in limine* to preclude Plaintiff Nolan's proffer of evidence relating to medical staff's *post-delivery* resuscitation efforts because such evidence was both a material variance from Nolan's theory of liability articulated in her *SAC* and would have prejudiced Defendants/Appellees by requiring them to defend against an entirely different theory about which they received no notice.  Therefore, consistent with controlling precedent cited above, we affirm the judgment entered below.

Judgment affirmed.


Judgment Entered.



Benjamin D. Kohler, Esq.
Prothonotary



Date: 10/28/2025