**Sharon GRAHAM, Appellee**

**v.**

**Bertulfo CAMPO, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 6, 2009.

Filed Jan. 15, 2010.

Reargument Denied March 23, 2010.

Phillip A. Ryan, Philadelphia, for appellant.

Marc A. Weinberg, Jenkintown, for appellee.

BEFORE: STEVENS, BOWES, JJ., and McEWEN, P.J.E.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment entered by the Court of Common Pleas of Philadelphia County for Sharon Graham–Nutter (hereinafter "Graham") in the amount of $204,247.79 in damages following the denial of post-trial motions filed by Bertulfo Campo ("Appellant"). We affirm.

¶ 2 This case arises from a hit-and-run automobile accident that occurred at approximately 6:30 p.m. on July 14, 2004 in Philadelphia. Graham, who was waiting to make a turn onto Wyoming Avenue, was struck from behind by a car whose driver fled the accident scene. N.T., 4/25/08, at 8. Even though the accident tore Graham's bumper off, the driver of the vehicle that caused the accident never stopped. *Id.*

¶ 3 After two bystanders provided Graham with the license plate number of the other vehicle, the police ascertained that Appellant was the owner of the vehicle that hit her. *Id.* at 11–13. The police report did not identify the driver of the vehicle, and Appellant never reported the accident to police. *Id.* at 88. Unaware that Appellant was not driving his vehicle at the time of the accident, Graham filed her complaint on July 3, 2006, alleging in paragraphs 4–5 that:

4. At the aforesaid date and time, [Appellant] Bertulfo Campo was the owner and operator of a motor vehicle ... [that] was so carelessly and/or negligently controlled and/or operated when suddenly and without warning, it attempted to pass [Graham's] vehicle ... which was lawfully traveling at the point aforesaid.

5. The injuries and damages hereinafter set forth were caused solely by and were the direct and proximate result of the negligence of [Appellant], which consisted, *inter alia,* of the following:

\*     \*     \*

j. In violating the various statutes and municipal ordinances pertaining to the operation of motor vehicles on public thoroughfares under the circumstances ...

Compl. ¶ 3–4. In his answer filed December 1, 2006, Appellant Campo admitted he owned the aforementioned vehicle, but claimed he was "without knowledge or information sufficient to form a belief as to the truth as to the averments" as to the driver's identity or how the car was operated. Answer at ¶ 4. However, at an arbitration hearing on April 3, 2007, after Graham's statute of limitations had elapsed, Appellant conveniently informed Graham for the first time that his friend Jesus Alamillo–Garcia was the driver of the vehicle.

¶ 4 Appellant proceeded to argue that he could not be held liable for the accident as the complaint alleged that he was the driver of the vehicle. The Board of Arbitrators entered a decision in favor of Appellant. Graham filed an appeal and requested a trial *de novo*. On September 28, 2007, Graham moved to amend her complaint to include a claim against Appellant for negligent entrustment. The Honorable Jane C. Greenspan denied Graham's motion on November 1, 2007. Graham requested reconsideration of the motion, which was subsequently denied on November 30, 2007.

¶ 5 A bench trial was held on April 24–28, 2008 before the Honorable Ricardo C. Jackson. After evaluating Appellant and Garcia's "conflicting," "unreliable," and "self-impeaching testimony," the trial court found "both witnesses to be untruthful." Trial Court Opinion, 2/18/2009, at 3. Accordingly, the trial court found Appellant knew Garcia did not possess a valid driver's license, and thus violated 75 Pa.C.S.A. § 1574, which provides:

§ 1574. **Permitting unauthorized person to drive.**

(a) **General Rule.**—No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this chapter or who is not licensed for the type or class of vehicle to be driven.

(b) **Penalty.**—Any person violating the provisions of subsection (a) is guilty of a summary offense and shall be jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle.

75 Pa.C.S.A. § 1574.

¶ 6 At trial, Dr. Michael McCoy, M.D., testified with a reasonable degree of medical certainty that as a result of the accident, Graham sustained a continued C7–C8–T1 nerve root injury, strains and sprains in her cervical, thoracic, and lumbar regions, and a possible brachial plexopathy and ulnar neuropathy. N.T. Trial, 4/25/08, at 124–25. Dr. McCoy opined that her injuries would likely be permanent and that she "basically is going to have to live with [the nerve damage]." *Id.* at 123, 126. Ms. Graham testified that her injuries not only restrict her from her active life and her normal routine of exercising at the gym, but keep her from accomplishing ordinary tasks such as chores, self-maintenance, cooking, and driving. *Id.* at 32–38.

¶ 7 As a result, the trial court entered a judgment in Graham's favor for $191,317.81. Appellant filed a motion for post trial relief, requesting judgment n.o.v. or a new trial in the alternative, which the trial court denied on October 21, 2008.[1] Appellant filed this timely appeal.

¶ 8 Appellant raises the following issues for our review:

---

1. The trial court also entered an order granting Graham's petition for delay damages. As a result, the trial court molded the award to add delay damages in the amount of $12,929.66 for a total net verdict of $204,247.79.

A. Whether the trial court erred as a matter of law by not entering judgment for [Appellant] when [Graham] failed to plead a cause of action for either negligent entrustment or violation of 75 Pa.C.S.A. § 1574 and [Appellant's] liability could only arise out of his status as the owner of the vehicle, not as the operator of the vehicle?

B. Whether the trial court erred or abused its discretion in finding [Appellant] liable when [Graham] failed to meet her burden of proof that [Appellant] knew or should have known that the driver of the vehicle was unlicensed, assuming that the claim for violation of § 1574 was properly before the court?

C. Whether the trial court erred or abused its discretion in awarding non-economic damages to [Graham] even though [Graham] failed to satisfy the limited tort threshold?

D. Whether the trial court abused its discretion in that the amount of the verdict awarded was shocking as clearly excessive and against the weight of the evidence?

¶ 9 When considering a challenge to the trial court's ruling denying a motion for judgment n.o.v., we must view the evidence in the light most favorable to the verdict winner and give her the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. *Underwood ex rel. Underwood v. Wind,* 954 A.2d 1199, 1206 (Pa.Super.2008) (citations omitted). We will reverse the denial of a motion for j.n.o.v. only if the trial court abused its discretion or made an error of law that controlled the outcome of the case. *Long v. Mejia,* 896 A.2d 596, 599 (Pa.Super.2006) (citation omitted).

¶ 10 Similarly, when presented with a challenge involving a motion for a new trial, we will reverse a trial court's decision to deny the motion only if the trial court abused its discretion. *Gbur v. Golio,* 932 A.2d 203, 206–207 (Pa.Super.2007) (citations and quotations omitted). An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. *Id.*

¶ 11 Appellant first argues the trial court erred as a matter of law by not entering judgment in his favor when Graham failed to plead a cause of action for either negligent entrustment or violation of 75 Pa.C.S.A. § 1574. Appellant claims that Graham's complaint never references the unlicensed status of the driver (Garcia) or that Appellant knew or should have known that Garcia did not have a license when he lent him his vehicle.

¶ 12 In reviewing this issue, a brief discussion of the law of variance is warranted:

A variance denotes difference and in reference to legal proceedings it refers to a disagreement or difference between the allegations made and the proof shown, not in the sense that there is a failure of proof, but that, contrary to the fundamental principle of good pleading and practice, the proof fails to materially correspond to the allegations. A material variance consists of a departure in the evidence from the issues on which the cause of action must depend.

\* \* \*

For purposes of determining whether a claimed or apparent discrepancy between pleadings and proof constitutes a variance, the entire pleadings and evidence should be considered. Generally,

in order to constitute a variance, the discrepancy must exist between the allegations and proofs of the particular party, with the result that a party is not permitted to introduce evidence that is inconsistent with or fails to correspond to the allegations made by that party.

The modern rules of pleading and practice are relatively liberal. Consequently, the impact of variance may be diminished by the preference for a liberal if not informal evaluation of pleadings emphasizing the determination of cases based upon their merits rather than based on mere technicalities, which policy, for example, may allow a party to cure a variance by offering, during or after trial, to amend the pleadings to conform to the proof.

*General pleading allegations which are not objected to because of their generality, may have the effect of extending the available scope of a party's proof, such that the proof would not constitute a variance, beyond that which the party might have been permitted to give under a more specific statement.*

*Reynolds v. Thomas Jefferson University Hosp.*, 450 Pa.Super. 327, 676 A.2d 1205, 1209 (1996) (emphasis added).

■ ¶ 13 Appellant argues that Graham should not have been allowed to "amend" her pleading, as an amendment is not permitted after the running of the statute of limitations if it introduces a new cause of action. *Matos v. Rivera*, 436 Pa.Super. 509, 648 A.2d 337, 340 (1994). Appellant relies on *Matos* to claim that "a new cause of action arises if the amendment proposes a different theory or a different kind of negligence than the one previously raised or if the operative facts supporting the claim are changed." *Id.*

¶ 14 However, in light of our liberal view of interpreting pleadings, this Court observed in *Reynolds* that an amendment

does not introduce a new cause of action if it *"merely adds to or amplifies* the original complaint or if the original complaint states a cause of action showing that the plaintiff has a legal right to recover what is claimed in the subsequent complaint." *Reynolds*, 676 A.2d at 1209–10. In *Connor v. Allegheny General Hospital*, 501 Pa. 306, 309–310, 461 A.2d 600, 602 (1983), the plaintiff claimed the trial court erred in refusing to allow her to amend her complaint to allege the hospital defendant was negligent in its undue delay in providing care, when her original pleading alleged only affirmative acts of negligence. The Supreme Court found that a plaintiff's amendment should have been allowed because it amplified the original general complaint which alleged the defendant hospital was negligent in "otherwise failing to use due care and caution under the circumstances." *Id.* at 310, 461 A.2d at 602.

¶ 15 Similarly, in this case, Graham alleged in her original complaint that Appellant was negligent in "violating the various statutes and municipal ordinances pertaining to the operation of motor vehicles on public thoroughfares under the circumstances." Appellant never made a preliminary objection to ask for a more specific pleading. The trial court found this general language encompassed Appellant's violation of the statutory provisions of § 1574 by allowing an unlicensed driver to operate his vehicle. Additionally, the matters in Graham's amended complaint were part of a causally related chain of events which Appellant had notice from the very day of the accident and, therefore, was not prejudiced in his defense by the amended complaint.

¶ 16 Moreover, Appellant cannot claim he did not have notice of Graham's intent to claim he negligently entrusted his vehicle when his actions suggest he actively misled Graham into believing he was driv-

ing the vehicle. As noted above, in responding to Graham's complaint that he was operating the vehicle at the time of the accident, Appellant did not flatly deny this contention, but responded in his answer that he was "without knowledge or information sufficient to form a belief as to the truth as to the averments." *See De-Rugeriis v. Brener,* 237 Pa.Super. 177, 348 A.2d 139, 140 (1975) (*en banc*) (permitting plaintiff's amendment when the defendant actively concealed the identity of the driver that caused the accident until the statute of limitations had run). Appellant cannot claim prejudice when he withheld the fact that Garcia was driving the vehicle until after the statute of limitations had run.

¶ 17 Appellant next argues that the trial court abused its discretion in finding him liable as he contends Graham failed to prove that Appellant knew or should have known that the driver of his vehicle (Garcia) was unlicensed. In finding a violation of § 1574, it "must be shown that the owner or controller [of the vehicle] knew, or had reason to know, at the time he entrusted his vehicle to another, that the driver he was authorizing or permitting to drive his vehicle was unlicensed." *Shomo v. Scribe,* 546 Pa. 542, 547, 686 A.2d 1292, 1295 (1996).

¶ 18 The trial court strongly expressed its reluctance to give any weight to the testimony of Appellant and Garcia, stating it "was required to cull out the truth from the myriad of self-impeaching testimony and found both witnesses to be untruthful." Trial Court Opinion, 2/18/09, at 3. The trial court pointed to several parts of Appellant's testimony when "Appellant appeared to forget what happened, changed his story, or attempted to cast doubt on the testimony of others when it best suited him," as demonstrated through the following excerpt:

Q: Is Mr. Garcia also mistaken when he said you knew he had a Mexican license?

[Appellant]: Yes, he is wrong.

Q: He is wrong about that too?

[Appellant]: Yes, he is. He was wrong when he said that I knew he had a license from Mexico.

Q: Is his wife, Ms. Garcia, also wrong when she said they borrowed the car before the date of the accident?

[Appellant]: Yes, she was wrong.

Q: Is Ms. Garcia mistaken when she said you had asked to see a copy of the license?

[Appellant]: Yes, completely wrong.

N.T. Trial, 4/28/08, at 6–7. The trial court is correct in noting that Mr. Garcia also gave conflicting testimony on several occasions. At the initial arbitration, Garcia testified to the following:

Q: Sir, you were involved in an accident on July 11, 2004?

Garcia: That was why I left because if I had stayed [Appellant] would have to pay for the accident.

N.T. Arbitration, 4/3/2007, at 9. At trial, Garcia refuted his own testimony:

Q [Reading from Arbitration Transcript]: **Your answer was:** "That was why I left because if I had stayed [Appellant] would have to pay for the accident." Did you say that in part, sir?

Garcia: It was her fault.

Q: Sir, did you make those comments that your friend would have to pay and that is why you left the accident scene?

Garcia: I didn't say that.

N.T. Trial, 4/25/2008, at 158 (bold in original). On other occasions, Garcia blamed the court reporter when opposing counsel impeached him with his inconsistent statements:

Garcia: No, it was probably a mistake on the one who wrote that.

Question: Your answer at the time was "Yes." Are you making a mistake now or did you make a mistake—

Garcia: I am not going to try to contradict myself. To me, whoever wrote that, that is not what I said.

Question: So you are [telling] us that the court reporter who prepared this document made a mistake regard to the translation?

Garcia: Probably.

*Id.* at 152–153. As we will not substitute our judgment for that of the finder of fact on questions of credibility and weight accorded evidence at trial, we find that the trial court did not err in finding Appellant knew Garcia was unlicensed and thus, committed a violation of § 1574 by permitting Garcia to drive his vehicle.

¶ 19 Appellant's third claim is that the trial court erred in awarding noneconomic damages when Graham failed to satisfy the limited tort threshold. Under the limited tort option, Pennsylvania law provides in pertinent part:

Limited tort alternative.—Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss . . .

75 Pa.C.S.A. § 1705(d). Appellant claims Graham should have been precluded from receiving non-economic damages because the injuries she sustained were not "serious" as required by statute. We disagree.

◼ ¶ 20 Section 1702 defines serious injury as "an injury resulting in death, serious impairment of a bodily function, or permanent disfigurement." 75 Pa.C.S.A. § 1702. Several factors must be considered to determine if the claimed injury is "serious": "[1] the extent of the impairment, [2] the length of time the impairment lasted, [3] the treatment required to correct the impairment, and [4] any other relevant factors." *Long*, 896 A.2d at 600 (citations omitted). An injury need not be permanent to be serious. *Id.* We emphasize that "the focus of this analysis is not on the injuries themselves, *but on how the injuries affected a particular body function.*" *Robinson v. Upole*, 750 A.2d 339, 343 (Pa.Super.2000) (emphasis added) (reversing a trial court's grant of summary judgment as reasonable minds could have found the plaintiff sustained a serious injury when it prevented her from doing physical activity such as housework without pain).

◼ ¶ 21 Viewing the evidence in light most favorable to Graham, we find that the trial court neither committed an error of law nor abused its discretion in determining Graham had suffered a serious impairment of a body function. Dr. McCoy, an expert in family medicine, testified with a reasonable degree of medical certainty that as a result of the accident, Graham sustained a "left C7–C8–T1 nerve root injury, cervical [ ], thoracic [ ], and lumbar strain[s] and sprain[s], that as of the last time she was seen she still had a left cervical nerve root injury and a possible brachial plexopathy and ulnar neuropathy." N.T. Trial, 4/25/08, at 124–25.

¶ 22 Graham's injuries seriously impair several bodily functions, as Dr. McCoy testified that her injuries will "[a]ffect her on a daily basis [in] her ability to reach, grasp, to use her arm on any repetitive basis." *Id.* at 123, 125–26. Dr. McCoy

opined that Graham's injuries are permanent and explained that Graham "basically is going to have to live with [the nerve damage]." *Id.* at 123. Despite her water therapy and use of a TENS unit three or four times a week, Graham testified that her injuries cause her to heavily favor her right arm when doing chores to lessen the pain. She testified that her injuries restrict her from doing daily activities such as vacuuming, washing her hair, styling her hair, getting dressed, putting on jewelry, mixing and cooking, driving, typing, taking spinning classes, and lifting her granddaughter. Her injuries also cause her to be overly cautious in general motions as lifting or pulling. Thus, as Graham proved she sustained serious injuries in the accident, the trial court did not err in awarding her non-economic damages.

¶ 23 Appellant lastly argues that the damages awarded in this case were excessive.

Our standard of review in reversing an order denying a remittitur by a trial court is confined to determining whether there was an abuse of discretion or an error of law committed in such denial. The grant or refusal of a new trial because of the excessiveness of the verdict is within the discretion of the trial court. This court will not find a verdict excessive unless it is so grossly excessive as to shock our sense of justice. We begin with the premise that large verdicts are not necessarily excessive verdicts. Each case is unique and dependent on its own special circumstances and a court should apply only those factors which it finds to be relevant in determining whether or not the verdict is excessive.

*Whitaker v. Frankford Hosp. of City of Philadelphia,* 984 A.2d 512, 523 (Pa.Super.2009) (citations omitted). Graham's lost wages and medical bills amounted to $7,217.81. Prior to her accident, Graham was an active woman that enjoyed going to the gym, taking spinning classes, traveling, and being able to pick up her grandchild. After the accident, Graham has been extremely limited in her activities, as she cannot accomplish the most basic daily tasks without assistance, such as washing her hair or getting dressed. Graham's injuries also caused her to seek new employment as her condition made her feel unsafe when she worked as a medical records secretary in the Philadelphia Prison System. Under these circumstances, the trial court's award of $191,317.81 was not so grossly excessive as to shock our sense of justice.

¶ 24 Judgment affirmed.