J-A06003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SANDY KLINE, ADMINISTRATRIX OF THE ESTATE OF ROBERT KLINE AND IN HER OWN RIGHT | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | |
| | : | No. 1618 EDA 2024 |
| PHOENIXVILLE HOSPITAL CO., LLC D/B/A PHOENIXVILLE HOSPITAL, TOWER HEALTH & TOWER HEALTH MEDICAL GROUP, DANIEL A. RATLIFF, AND PMA MEDICAL SPECIALISTS, LLC | : : : : : : : | |

Appeal from the Judgment Entered May 10, 2024
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2020-00334-PL

BEFORE: PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:         **FILED MARCH 28, 2025**

Sandy Kline, as administratrix of the estate of Robert Kline, and in her own right (collectively "Plaintiff"), appeals from the May 10, 2024 judgment entered in favor of Phoenixville Hospital Co., LLC D/B/A Phoenixville Hospital, Tower Health & Tower Health Medical Group, PMA Medical Specialists, LLC (collectively "the Hospital Defendants"), and Daniel A. Ratliff.[1] After careful review, we reverse and remand for a new trial.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Daniel A. Ratliff is not involved with this appeal.

The trial court summarized the relevant facts and procedural history of this matter as follows:

> This medical malpractice action arises out of the treatment of Plaintiff's decedent, Robert Kline, at Phoenixville Hospital from January 28, 2008 through February 3, 2008. Mr. Kline presented to the Emergency Department on January 28, 2008 and was admitted to Phoenixville Hospital with diagnoses of pneumonia, pneumonitis, and hypoxia. The next day, Mr. Kline underwent a transthoracic echocardiogram (TTE), which was interpreted by Defendant, Dr. Daniel Ratliff[,] on January 30, 2018. Dr. Ratliff noted, inter alia, a probable bicuspid aortic valve without obvious stenosis, mildly elevated velocities. Dr. Ratliff did not identify any vegetation or suspect endocarditis. On January 30, 2018, Dr. [Karthik] Linganathan[ a cardiologist and Dr. Ratliff's colleague who is also employed by Defendant, PMA Medical Specialists, LLC] evaluated Mr. Kline for mildly elevated troponins. At the time of Dr[.] Linganathan's consultation, the results of the TTE were pending. Dr. Linganathan saw Mr. Kline again on January 31, 2018, and noted that Mr. Kline reported feeling better, but that his troponin levels were further elevated. After reviewing the results of the TTE, Dr. Linganathan recommended a cardiac catheterization. On January 31, 2018, Dr. Ratliff performed a right cardiac catheterization, left cardiac catheterization, and a coronary angiogram. In performing the left catheterization, Dr. Ratliff inserted a pigtail catheter into the left ventricle across the aortic valve. Thereafter, Mr. Kline suffered a series of strokes and died on February 5, 2008. The time and cause(s) of Mr. Kline's strokes and the reasons for his death were disputed by the parties' experts at trial.
>
> Plaintiff initiated the action on January 13, 2020, by filing a Complaint detailing allegations of negligence concerning the diagnosis, care, and treatment of endocarditis.

Trial Court Memorandum Opinion and Order, 4/29/24, at 2-3.

A jury trial began on November 28, 2023. The jury returned a verdict for the defense on December 6, 2023. Plaintiff filed a timely post-trial motion seeking a new trial. Specifically, Plaintiff contested the court's ruling on an

oral variance motion made by the Hospital Defendants on the final day of trial, which prohibited Plaintiff from pursuing any purported claims of vicarious liability against the Hospital Defendants for the alleged negligence of Dr. Linganathan. The post-trial motion was eventually denied following the trial court's review of briefs submitted by the parties. This timely appeal followed.[2]

Plaintiff raises the following issues on appeal:

1. Did the trial court reversibly or prejudicially err in granting the Hospital Defendants' belated, oral variance motion, resulting in dismissal of Plaintiff's claims that the Hospital Defendants were vicariously liable for the conduct of their agent, Karthik Linganathan, M.D., based upon an alleged material variance as between the Complaint and the proofs at trial?

2. Did the trial court reversibly or prejudicially err in denying Plaintiff's oral motion to amend the Complaint to conform the allegations to the proofs at trial with respect to Dr. Linganathan, based upon alleged prejudice to the Hospital Defendants that the trial court believed would have resulted?

Appellant's Brief, at 4.

Plaintiff's claims relate to the denial of her motion for a new trial. "[W]hen presented with a challenge involving a motion for a new trial, we will

_____

[2] In the notice of appeal, Plaintiff purported to appeal from the April 29, 2024 order denying the post-trial motion. Notably, the record shows that following the court's denial of the post-trial motion, the Hospital Defendants filed praecipes for entry of final judgment in their favor. A certified copy of the trial court docket shows that judgment was properly entered on the verdict on May 10, 2024. *See Brown v. Philadelphia Coll. Of Osteopathic Med.*, 760 A.2d 863 (Pa. Super. 2000) (reiterating that appeal does not properly lie from order denying post-trial motions, but upon judgment entered following disposition of post-trial motions). The appeal is properly before us and the caption reflects the date on which judgment was entered.

reverse a trial court's decision to deny the motion only if the trial court abused its discretion." ***Graham v. Campo***, 990 A.2d 9, 13 (Pa. Super. 2010) (citation omitted). "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." ***Id.*** (citation omitted).

First, Plaintiff contends the trial court's decision was based on misconceptions of law surrounding a claim for vicarious liability. We have previously discussed the differences between direct and vicarious liability:

> To prove negligence, a plaintiff may proceed against a defendant on theories of direct and vicarious liability, asserted either concomitantly or alternatively. Liability for negligent injury is direct when the plaintiff seeks to hold the defendant responsible for harm the defendant caused by the breach of duty owing directly to the plaintiff. By comparison, vicarious liability is a policy-based allocation of risk. Vicarious liability, sometimes referred to as imputed negligence, means in its simplest form that, by reason of some relation existing between A and B, the negligence of A is to be charged against B although B has played no part in it, has done nothing whatever to aid or encourage it, or indeed has done all that [it] possibly can to prevent it. Once the requisite relationship (*i.e.,* employment, agency) is demonstrated, the innocent victim has recourse against the principal, even if the ultimately responsible agent is unavailable or lacks the availability to pay.

***Sokolsky v. Eidelman***, 93 A.3d 858, 864 (Pa. Super. 2014) (citing ***Scampone v. Highland Park Care Center, LLC***, 57 A.3d 582, 597 (Pa. 2012) (citations omitted)). "Accordingly, in order to hold an employer vicariously liable for the negligent acts of its employee, these acts must be

'committed during the course of and within the scope of the employment.'"
*Id.* (citation omitted).

Here, the trial court concluded Plaintiff could not assert any claims involving wrongdoing committed by Dr. Linganathan because Plaintiff failed to specifically name Dr. Linganathan in the Complaint. The trial court reasoned as follows:

> Here's what's troubling me, Counsel. Dr. Linganathan, not named as a party … Not named as a party, not called as a witness, no opportunity to defend themselves or explain themselves. You're basically trying him in absentia, added as a person who may have been negligent in this case. I think that's substantially prejudicial to both him and the hospital, especially at this late date.

N.T., 12/6/23, at 140. The trial court maintains this position in its opinion supporting its decision to deny Plaintiff's motion for a new trial. *See* Trial Court Opinion, 4/29/24, at 12 ("Dr. Linganathan was never a party to this action. Accordingly, there were no direct claims against him and no certificate of merit was filed as to his conduct.").

Our review of the certified record indicates that Plaintiff pled claims of both direct and vicarious liability against the Hospital Defendants in the Complaint. While the trial court may be correct that Plaintiff could not raise a claim of direct liability against Dr. Linganathan at trial, the same could not be said for a vicarious liability claim, in which the Hospital Defendants would be liable for the acts of their agents or employees, including, but not limited to, Dr. Linganathan. Plaintiff did not have to name Dr. Linganathan in the Complaint as part of a vicarious liability claim against the Hospital Defendants;

nevertheless, Plaintiff certainly named him later, throughout both the detailed discovery period and by way of admissible evidence at trial.

Upon review, we conclude the trial court erred when it prevented Plaintiff from establishing a right to recovery on her vicarious liability claim solely because she did not specifically name Dr. Linganathan as an individual defendant. "Simply because employees are unnamed within a complaint or referred to as a unit, *i.e.*, the staff, does not preclude one's claim against their employer under vicarious liability if the employees acted negligently during the course and within the scope of their employment." ***Sokolsky***, 93 A.3d at 866 (citations omitted).

Here, the Hospital Defendants may be subject to vicarious liability for the negligent acts and omissions of its staff regarding the quality of care it rendered to Mr. Kline. This vicarious liability attaches to the Hospital Defendants regardless of Plaintiff's attack of an individual member of any applicable entity's staff. Granted, Plaintiff still had to establish during trial that the staff, or a staff member, breached a duty that was owed, and that this breach caused damages, in order to recover on a medical malpractice action.

Accordingly, we conclude the trial court erred as a matter of law when it reasoned that Plaintiff was required to specifically name Dr. Linganathan when her claims included a vicarious liability claim against the Hospital Defendants.

Having determined that Plaintiff did not need to specifically name Dr. Linganathan in order to pursue the claim of vicarious liability pled in the Complaint, we must determine whether or not the court erred in granting the variance motion.

This Court has previously set forth the law of variance as follows:

A variance denotes difference and in reference to legal proceedings[,] it refers to a disagreement or difference between the allegations made and the proof shown, not in the sense that there is a failure of proof, but that, contrary to the fundamental principle of good pleading and practice, the proof fails to materially correspond to the allegations. A material variance consists of a departure in the evidence from the issues on which the cause of action must depend.

For purposes of determining whether a claimed or apparent discrepancy between pleadings and proof constitutes a variance, the entire pleadings and evidence should be considered. Generally, in order to constitute a variance, the discrepancy must exist between the allegations and proofs of the particular party, with the result that a party is not permitted to introduce evidence that is inconsistent with or fails to correspond to the allegations made by that party.

The modern rules of pleading and practice are relatively liberal. Consequently, the impact of variance may be diminished by the preference for a liberal[,] if not informal[,] evaluation of pleadings emphasizing the determination of cases based upon their merits rather than based on mere technicalities, which policy, for example, may allow a party to cure a variance by offering, during or after trial, to amend the pleadings to conform to the proof.

General pleading allegations which are not objected to because of their generality, may have the effect of extending the available scope of a party's proof, such that the proof would not constitute a variance, beyond that which the party might have been permitted to give under a more specific statement.

- 7 -

*Young v. Lippl*, 251 A.3d 405, 418 (Pa. Super. 2021) (quoting *Graham v. Campo*, 990 A.2d 9, 13-14 (Pa. Super. 2010), *appeal denied*, 16 A.3d 504 (Pa. 2011)).

As said above, a variance between pleadings and proof will be considered material only if the defendant has been misled; that is, if the proof imposes a different burden on the defendant and/or sets up a different cause of action than the one alleged. *Id.* Relief is only warranted where the variance is material and prejudices the defendant. That is, even where the *allegata*−the things alleged−and the *probate*−the things proven− "may not entirely agree, if the defendant is not misled, and the variance does not in any way affect the trial on its merits, or set up a different cause of action, or impose any different burden on the defendant, the variance will not be considered material." *Lippl*, 251 A.3d at 418-19 (record citation and emphases omitted). A variance is not material where it "merely adds to or amplifies the original complaint." *Graham*, 990 A.2d at 14 (citation and emphasis omitted).

Here, the trial court explained that the motion for a new trial "was properly denied because Plaintiff's theory at trial regarding Dr. Linganathan was a material variance from the allegations set forth in the Complaint." Memorandum Opinion and Order, 4/29/24, at 12. We disagree. We further find that the Hospital Defendants were not prejudiced by any alleged variance, because they were amply put on notice that Dr. Linganathan's actions were at issue.

Relying on ***Reynolds v. Thomas Jefferson Univ. Hosp***, 676 A.2d 1205 (Pa. Super. 1996), the trial court found that the allegations involving the standard of care provided by Dr. Linganathan constituted a change in the operative facts made after the running of the statute of limitations for claims of negligence. ***Reynolds*** does not support the trial court's decision here:

> ***Reynolds*** involved a medical malpractice action brought against a hospital system and a particular doctor, Dr. Daniel Anthony Beneski. The complaint sounded in negligence based upon Dr. Beneski's intubation of the complainant, Charmaine Reynolds, resulting in injury. The proof adduced at trial, however, in the form of expert testimony and an accompanying report, was that a different physician, Dr. Christopher Chambers, was negligent in failing to refer Ms. Reynolds to a specialist after her hoarseness persisted for more than ten days.
>
> Reviewing precedent, this Court concluded that a material variance between a pleading and the evidence adduced at trial occurs when a plaintiff raises a different legal theory, a different type of negligence, or changes the operative facts to support the claim. It further recognized that "a variance is not material if the alleged discrepancy causes no prejudice to the adverse party."
>
> The ***Reynolds*** Court found that although Ms. Reynolds continued to raise a claim sounding in negligence, the allegations pertained solely to Dr. Beneski's actions; the facts pertaining to Dr. Chambers, which were never pled, constituted a new cause of action because they changed the operative facts to support the negligence claim, and this change prejudiced the appellants:
>
>> The operative facts supporting Dr. Chambers' alleged negligence relate to his failure to recognize the potential seriousness of appellee's hoarseness and his delay in referring her to a specialist. In order to defend against this allegation, appellant would have been required to retain an expert in the field of family practice. Appellee's complaint, however, alleged the negligence of Dr. Beneski and other hospital agents in their performance of the intubation. To defend against these allegations, appellant would have been

- 9 -

required to, and did, retain an expert in the field of anesthesiology.

***Feldman v. CP Acquisitions 25, L.P.***, 325 A.3d 691, 702 (Pa. Super. 2024) (citations omitted).

Here, there was no new claim raised at trial and no change to the operative facts to support the claim of negligence previously raised in the Complaint. In the Complaint, Plaintiff raised one count of negligence against the Hospital Defendants based upon its failings relative to the care of Mr. Kline. This claim asserted both direct and vicarious liability against the Hospital Defendants. The evidence presented at trial supported this claim. The pleadings and evidence all were based upon the standard of care provided to Mr. Kline during the assessment of his condition. Whether one or two cardiologists were negligent in their failure to properly read and interpret the echocardiogram did not change the legal landscape for the Hospital Defendants. Additionally, the allegations concerning Dr. Linganathan, which the Plaintiff argued was attributable to the Hospital Defendants, was adequately raised in discovery and in the expert report.

Further, there are no statute of limitations issues because Plaintiff did not attempt to add any new defendants; rather, Plaintiff was merely supporting the timely raised vicarious liability claim.

Finally, as stated above, Plaintiff's assertion that Dr. Linganathan was an agent of the Hospital Defendants was not a surprise to the Hospital Defendants. This assertion was addressed in an expert report by cardiologist

Emil Hayek, M.D. submitted by Plaintiff during discovery, long before trial. *See* Expert Report of Emil Hayek, M.D., 7/17/23, at 6-7, 11-12 (clearly addressing Dr. Linganathan's role as part of the team caring for Mr. Kline and clearly stating Dr. Linganathan deviated from the standard of care).

The Hospital Defendants argue the issue here is not a "lack of surprise." Appellees' Brief, 12/10/24, at 28. Instead, the Hospital Defendants only assert prejudice regarding the alleged standard of limitations issue. As we have already concluded there is no statute of limitations issue, we find the Hospital Defendants were not prejudiced by any alleged discrepancy between the pleadings and the proof offered at trial. *See Reynolds*, 676 A.2d at 1210.

While we agree with the trial court that Plaintiff knew about Dr. Linganathan's role in the care of Mr. Kline at the time she filed the Complaint, and therefore *could have* identified Dr. Linganathan specifically as an alleged agent of the Hospital Defendants, we disagree that such specificity was necessary in this case to raise a vicarious liability claim against the Hospital Defendants based on the actions of the cardiologists.

> The purpose of the pleadings is to place the defendants on notice of the claims upon which they will have to defend. A complaint must give the defendants fair notice of the plaintiff's claims and a summary of the material facts that support those claims.

*Yacoub v. Lehigh Valley Medical Associates, P.C.*, 805 A.2d 579, 588 (Pa. Super. 2002) (citation omitted).

Here, the trial court focuses on the number of times Dr. Ratliff's name is mentioned, compared with Dr. Linganathan, and relevantly only cites one

- 11 -

sentence from one paragraph of Count 1 of the Complaint, in which Dr. Ratliff is specifically named as an agent of the Hospital Defendants. ***See*** Complaint, 1/13/20, at ¶ 41. However,

> it is not enough to focus upon one portion of the complaint. Rather, in determining whether a particular paragraph in a complaint has been stated with the necessary specificity, such paragraph must be read in context with all other allegations in that complaint. Only then can the court determine whether the defendant has been put upon adequate notice of the claim against which he must defend.

***Yacoub***, 815 A.2d at 589 (citation omitted).

Relevantly, in the Complaint, in describing the parties, Plaintiff stated that "[e]ach and every defendant is liable for the acts of its agents, servants, ostensible or apparent agents and/or employees, including these named herein as well as well as those identified in discovery." Complaint, 1/13/20, at 3, ¶ 11 (citing ***Estate of Denmark v. Williams***, 117 A.3d 300, 306-07 (Pa. Super. 2015)).

Notably, Plaintiff names multiple doctors who are not specifically listed as a defendant. Specifically, Plaintiff indicates Mr. Kline was seen by William Shibe, M.D. and admitted by Manjula Raman, M.D. prior to seeing Dr. Ratliff. ***See id.*** at ¶¶ 16-17. After seeing Dr. Ratliff, the Complaint states that Dr. Linganathan evaluated Mr. Kline. ***See id.*** at ¶ 21. After Dr. Ratliff performed surgery on Mr. Kline, Marta Jimenez, M.D. completed a physical examination of Mr. Kline. ***See id.*** at ¶ 29.

In Count One, Plaintiff asserts a cause of negligence against the Hospital Defendants, specifically asserting:

> 40. The personal injuries and losses of plaintiffs were caused by the negligence and carelessness of all named defendants, acting individually or in concert, **and of their agents, servants, employees (actual, ostensible, or otherwise)**, acting within and during the scope of their employment, authority, or apparent authority, **including** Dr. Ratliff.

*Id.* at ¶ 40.

While Plaintiff goes on to specify Dr. Ratliff as one of those "agents, servants, and/or employees", *see id.* at ¶ 41, Plaintiff never limits the "agents, servants, and/or employees" to just Dr. Ratliff. *See id.* at ¶¶ 40-42 (specifically, always using plural language, and using inclusive language, while never using limiting language).

Plaintiff goes on to assert the "negligence and carelessness of the Hospital Defendants, acting through their employees, agents, and servants, included: … failure to properly read and interpret the echocardiogram performed on 29 January 2019." *See id.* at ¶ 42(c). Plaintiff clearly stated earlier in the Complaint that Dr. Linganathan had reviewed the echocardiogram and made a recommendation based on his review of the test. *See id.* at ¶ 21.

These allegations can clearly be read as calling into question the Hospital Defendants' conduct through its cardiologists. Accordingly, when the paragraphs in the Complaint are read in context with the other allegations, we

find the Complaint sufficiently put the Hospital Defendants on adequate notice of the claim against which it must defend.

If the Hospital Defendants desired more specificity as to the identity of their agents as raised in the Complaint, for which they could be held vicariously liable, they could have worked this out during preliminary objections. In fact, the Hospital Defendants did file preliminary objections pertaining to the lack of specificity regarding the vicarious liability claims. Specifically, the Hospital Defendants requested to strike all references to unidentified agents, servants and/or employees, *see* Preliminary Objections, 1/31/2020, at 4, seemingly acknowledging that it was clear there were other agents at issue in addition to those specifically named.

The trial court overruled the objections, concluding the Complaint was stated with necessary specificity when read as a whole. ***See*** Order, 4/2/20 (citing to ***Yacoub***, 805 A.2d at 588). The Hospital Defendants did not file any additional preliminary objections.

Subsequent to the resolution of the preliminary objections, the Hospital Defendants seemingly understood Dr. Linganathan's role in the allegations well enough to participate in protracted discussions related to taking Dr. Linganathan's deposition during discovery. Further, the Hospital Defendants understood Dr. Linganathan's role in this case well enough to include Dr. Linganathan in their opening statement, specifically related to his standard of care. ***See*** N.T., 11/28/23, 9:01 a.m. Session, at 53 ("Phoenixville Hospital

- 14 -

stands with the cardiologists in the case. Dr. Linganathan and Dr. Ratliff met the standard of care. The acted reasonably, carefully, prudently in each and every way they treated the patient."); *see id.* at 54 ("So please understand, the hospital stands with Dr. Ratliff. He met the standard of care. Dr. Linganathan met the standard of care.").

Dr. Linganathan was also included in numerous discussions throughout trial, both on direct examination and cross-examination, without any defense objection to the testimony of the care provided by Dr. Linganathan. *See* N.T., 11/28/23, 11:01 a.m. session, at 65-67 (numerous questions and answers with expert witness regarding the standard of care provided by both Dr. Ratliff and Dr. Linganathan, with no defense objections made).; *see id.* at 109, 138-42 (expert witness discussing Dr. Linganathan's role in Mr. Kline's care, without any defense objection); *see also* N.T., 11/29/23, at 8-9 (expert witness clarifying his criticisms of Dr. Linganathan on the day prior were not "individually, just as an agent of the hospital", without any defense objection); *see id.* at 26-35 (further discussing Dr. Linganathan's role in Mr. Kline's care on cross-examination with defense counsel); *see id.* at 45-47 (expert witness clarifying that Dr. Linganathan *recommended* a catheterization, and that Dr. Ratliff then performed a catheterization that he believed to be appropriate, but that Dr. Linganathan could not *order* another cardiologist to do such a procedure); *see* N.T., 12/1/23, at 46-48, 57-59 (Ms. Kline testifying regarding her discussions with Dr. Linganathan related to Mr. Kline's condition); *see*

*also* N.T., 12/4/23, at 280, 283, 298 (another doctor involved in Mr. Kline's care testifying regarding Dr. Linganathan's involvement as one of the cardiologists that cared for Mr. Kline); *see also* N.T., 12/6/23, at 77, 79-80, 124-26 (Dr. Ratliff's testimony, including discussion of the team of doctors involved in Mr. Kline's care, including numerous specific references to Dr. Linganathan).

On the second day of trial, defense counsel specifically referenced the designations from Plaintiff's counsel on Dr. Linganathan's testimony from his deposition. *See id.* at 227. Acknowledging that Plaintiff had provided a series of designations from Dr. Linganathan's testimony, defense counsel moved to preclude and strike only a portion that referenced a dispute between Dr. Linganathan and another doctor in the hospital. The court granted the motion, related only to any reference to the argument between the two doctors. Plaintiff's counsel subsequently read the remainder of the deposition designations of the testimony of Dr. Linganathan into the record. *See id.* at 233.

On the fourth day of trial, prior to Ms. Kline's testimony, defense counsel made two motions to preclude certain testimony regarding statements made by a nurse to Ms. Kline, and a phone call Ms. Kline received from Dr. Linganathan after Mr. Kline's passing. *See* N.T., 12/1/23, at 4-7. Plaintiff's counsel argued the testimony regarding Dr. Linganathan's phone call was relevant to the case and the care that was issued, "because this case all starts

with Dr. Linganathan and his management of the patient, his failure to consider acute endocarditis, his failure to communicate that to Dr. Ratliff, his failure to review the echocardiogram in the context of acute endocarditis with Dr. Linganathan …". *Id.* at 15-16. There was no defense objection to this description of the case.

On the fifth day of trial, after Plaintiff had rested her case at the end of the prior week, the defense took testimony from their experts. During a discussion regarding an objection to Plaintiff's cross-examination of one of the experts, Plaintiff's counsel clarified that "there's criticisms of Dr. Linganathan for not considering [endocarditis]. That's the whole case. Part of the case, it's not the whole case." N.T., 12/4/23, at 78. Defense counsel then continued the discussion without any critique of that characterization of the case.

Finally, on the sixth and last day of trial, at the close of evidence for the defense, it appears the defense made an off the record oral variance motion during an hour-long recess. *See* N.T., 12/6/23, at 137. (court asking Plaintiff's counsel upon returning for recess, "do you have some law for me?", seemingly referencing the off-the record request). As this was done off the record, we have no way to confirm how the motion was made, or what argument was presented by the defense to support the motion.

Accordingly, rather than timely calling the alleged lack of specificity to the trial court's attention and thereby allowing Plaintiff the opportunity to file an amendment, the Hospital Defendants waited until the close of evidence,

after Dr. Linganathan's care had been discussed by both sides in the presence of the jury throughout trial, to call into question an alleged variance from the Complaint. While we cannot fault tactical maneuvers which benefit a client, the lack of a timely objection certainly prejudiced the Plaintiff.

Further, at the time of the oral variance motion, depositions were concluded, including Dr. Linganathan's deposition, and Plaintiff's expert had filed her report opining that both Drs. Ratliff and Linganathan were negligent. Since Dr. Linganathan was not named as a party it should have been readily apparent that his conduct was only being called into question to support a vicarious liability theory. Therefore, the Hospital Defendants cannot now claim that they were surprised to find out that Plaintiff intended to claim that Dr. Linganathan was one of its agents.

Regarding the timing of the oral motion, the Hospital Defendants seem to be under the impression that an almost century-old decision from our Supreme Court—**Kehres v. Stuempfle**, 136 A. 794 (Pa. 1927)—is dispositive to their proposition that a defendant is not required to object to a variance between the pleadings and proof at the first opportunity to do so. While we acknowledge that **Kehres** remains good law despite its age, it is nevertheless not applicable to this matter.

In **Kehres**, the plaintiff brought an action in trespass to recover damages. At trial, at the close of the plaintiff's case, the defendants moved for a nonsuit based on the ground that the proofs did not support the

allegations in the complaint. The court denied the nonsuit. At the end of their case, the defendants presented a point for binding instructions that the trial judge declined, and a verdict was rendered in the plaintiff's favor. Subsequently, the court entered a judgment notwithstanding the verdict for the defendants on the grounds that the proofs did not support the negligence alleged.

On appeal, the plaintiff argued that the defendants, having proceeded with their evidence following the denial of nonsuit, thereby waived the ability to contest the variance between the allegations and the proof.

On review, the Pennsylvania Supreme Court affirmed the principle that "we will not consider a question of variance between proof and pleadings where it was not raised in the court below." *Id*. at 795 (citation omitted). However, in rejecting a highly technical reading of this principal, the Supreme Court concluded "[t]he rule should be that the defendant may raise this question at any time on the trial, provided it is specifically raised so that the plaintiff may have an opportunity to amend his pleadings." Notably, this rule was specific to the circumstances in front of the court, namely where a motion for nonsuit had been made. Accordingly, the actual pronouncement of the rule emanating from *Kehres* was as follows:

> We therefore declare the rule to be that the defendants may raise the question of the disagreement between probata and allegata (1) when the testimony not covered by the pleadings is offered; (2) by a motion for a nonsuit, assigning the divergence as the reason; (3) by a motion for binding instructions in which the reason is assigned. If, however, no objection is made to the

testimony, and the specific reason is not assigned on the motion for a nonsuit or in the point for binding instructions, then the defendant, having taken his chance, may not thereafter raise the question.

*Id.* at 795.

This case does not involve a motion for nonsuit regarding Dr. Linganathan; nor do any of the other attenuating circumstances leading to the rule pronounced in *Kehres* exist here. As such, any reliance on *Kehres* is misplaced.

Here, the defense allowed depositions, expert reports and testimony, and then additional testimony, all related to Dr. Linganathan's role in this case, and only after the close of evidence for both sides, attempted to assert that Plaintiff was attempting to add a new party. Under these circumstances we find the Hospital Defendants waived their right to object to any alleged variance or from the Complaint or lack of specificity regarding the claims.

For the reasons stated above, we find the trial court abused its discretion in failing to grant Plaintiff a new trial. Given our resolution, and our finding that the Hospital Defendants were sufficiently put on notice of the claims in the Complaint, we need not examine Plaintiff's remaining contention that the court erred in denying the motion to amend the pleadings.

We briefly address the claim that PMA Medical Specialists, LLC ("PMA") is not a part of this appeal. Upon review of the record, we conclude PMA is subject to this appeal. PMA has been a party to this matter from the start,

having been included as a defendant in the Complaint, the post-trial motion, and the instant appeal.

We acknowledge that in its opinion in support of dismissing the post-trial motion, the trial court insinuated in a footnote that Plaintiff had waived post-trial claims against all parties except Phoenixville Hospital, because Plaintiff had only addressed Phoenixville Hospital in her brief in support of her post-trial motion. **See** Trial Court Opinion, 7/3/24, at FN1. The trial court proposed that "[i]ssues raised in a post-trial motion but not addressed in the subsequently filed brief are waived. **Id.** (citing to **Phillips v. Selig**, 959 A.2d 420, 437 (Pa. Super. 2008)). However, the trial court misinterpreted the finding from **Phillips**, in which this Court actually found a claim on appeal was waived for failure to offer any discussion, argument or citation to authority to support that claim in an appellate brief. **See Phillips**, 959 A.2d at 436.

PMA argues the trial court correctly determined Plaintiff waived any claim for post-trial relief as to PMA. In its brief, PMA also suggests it is confused about its inclusion as a "Hospital Defendant." Appellee's Brief, 1/9/25, at FN1. We find PMA's confusion perplexing. In the Complaint itself, Plaintiff specifically includes PMA in the definition of "the Hospital Defendants," and the post-trial motion states she is moving for relief against the Defendants, including PMA, and requesting a new trial against them. **See** Complaint, 1/13/20, at ¶ 9; Motion for Post-Trial Relief, 12/19/23, at 1, 7.

Further, we find the cases cited by PMA do not support waiver under the circumstances here. ***See Griffin v. Berdaoui***, 1521 EDA 2020 (Pa. Super. filed September 17, 2021) (unpublished memorandum)[3]; ***see also Bd. of Supervisors of Willistown Twp. v. Main Line Gardens, Inc.***, 155 A.3d 39 (Pa. 2017).

In ***Main Line Gardens***, the Pennsylvania Supreme Court affirmed that our rules of civil procedure do not require supporting briefs for post-trial motions. ***See Main Line Gardens***, 155 A.3d at 45 (citing Pa.R.C.P. 227.1). Accordingly, the failure to file an advocate brief does not violate the rule, and appellate courts may not find waiver pursuant to Rule 227.1 on this basis. ***See id.***

While we acknowledge a trial court may request the parties file briefs if it deems it necessary, and find waiver in its discretion if a party fails to do so, ***see id.***, both cases cited by PMA deal with an appellant totally failing to file a post-trial brief and discuss the waiver of "issues" not briefed. Here, Plaintiff has consistently maintained her issue is that the court erred in granting the oral variance motion, thereby preventing her from raising claims of vicarious liability. This is the issue she argued in her post-trial motion, post-trial brief, and now on appeal. While Plaintiff may have inartfully failed to specifically name PMA in her brief in support of her post-trial motion, and instead focused

_____

[3] Non-precedential decisions filed after May 1, 2019 are not binding but may be cited as "persuasive" authority. ***See*** Pa.R.A.P. 126(b)(2).

on Phoenixville Hospital, as the party who entered the oral variance motion at issue, Plaintiff has nevertheless always maintained that she was seeking a new trial to argue her vicarious liability claims, which clearly include PMA.

Judgment reversed and matter remanded for a new trial involving the Hospital Defendants, consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>3/28/2025</u>